# WIACEK FARMS, LLC *v.* CITY OF SHELTON ET AL.
## (AC 32260)

Gruendel, Beach and Alvord, Js.

Argued September 7—officially released November 15, 2011

*Dana B. Lee*, with whom, on the brief, were *Jon Berk* and *Katherine L. Matthews*, for the appellant (defendant Mark A. Lauretti).

*Thomas E. Minogue*, for the appellee (plaintiff).

*Opinion*

GRUENDEL, J. The defendant Mark A. Lauretti[1] appeals from the judgment of the trial court denying his motion for summary judgment, which asserted that the doctrine of collateral estoppel barred the action brought by the plaintiff, Wiacek Farms, LLC. We affirm the judgment of the trial court.

The record, viewed in the light most favorable to the plaintiff; see *Martinelli* v. *Fusi*, 290 Conn. 347, 350, 963 A.2d 640 (2009); reveals the following facts. In 1993, the city of Shelton (city), acting through its board of aldermen, adopted an open space plan with the purposes of identifying conservation areas and high priority open space areas and pursuing a greenway corridor program.

In October, 2003, the plaintiff submitted a twenty-four lot residential subdivision plan to the Shelton planning and zoning commission (commission) concerning a parcel of land of approximately forty-one acres adjacent to Shelton High School. The commission approved the plaintiff's subdivision proposal in March, 2004. In

---

[1] The city of Shelton, John Anglace, Thomas Dingle and Robert Kulacz also are defendants in this case. They did not join the motion for summary judgment and are not parties to this appeal. We refer to Lauretti as the defendant in this opinion.

July, 2004, the plaintiff posted the subdivision bonds required by the city and thereafter obtained a bank mortgage in the amount of $2 million for the purpose of developing the subdivision in accordance with the approved subdivision plan.

In December, 2003, the defendant, who at all relevant times was the mayor of the city, acquired title to a parcel of land in the city in the name of his limited liability company and with the intent of developing the property as a six lot subdivision. The complaint alleges that this property, if subdivided, would be in competition with the plaintiff's subdivision.

On August 6, 2004, John Anglace, president of the board of aldermen of the city, stated in the Connecticut Post that the board of aldermen recently had authorized the defendant, as mayor, to attempt to purchase the plaintiff's property on behalf of the city, and failing that, to commence condemnation proceedings. The defendant, in his capacity as mayor, subsequently met with representatives of the plaintiff to discuss the possible purchase of the property to achieve the goals of the city's open space plan. On August 31, 2004, the plaintiff's representatives informed the city that it was unwilling to sell its property to the city according to the defendant's proposed terms.

On September 13, 2004, the plaintiff submitted to city engineer Robert Kulacz a written application for an excavation permit to install utilities and new roads as set forth in the approved and recorded subdivision plan. On December 13, 2004, Kulacz informed the plaintiff's representatives that excavation permit applications must be approved by the mayor's office, allegedly at the behest of the defendant. Kulacz told the plaintiff's representatives that the defendant had ordered him not to issue any permits to the plaintiff and to direct any inquiries regarding the property to the mayor's office.

Thereafter, "stop work order" placards were placed on the plaintiff's property, stating that building code, zoning or wetland violations existed at the site.

On September 30, 2004, the city, acting through its board of aldermen, voted to condemn the property. On January 7, 2005, the city instituted a condemnation action by filing a statement of compensation in the Superior Court. In response, the plaintiff instituted an action seeking an injunction to preclude the city from condemning the property through eminent domain proceedings. *Wiacek Farms, LLC* v. *Shelton*, Superior Court, judicial district of Ansonia-Milford, Docket No. CV-05-4002169-S (March 30, 2005). The city was the only named defendant. The plaintiff claimed that the city failed to engage in any reasonable negotiations for the purchase of the property and therefore failed to satisfy a condition necessary for the institution of condemnation proceedings. The plaintiff also claimed that the city acted in bad faith, in part because the defendant owned land that also had been identified as a potential area for the city to purchase as part of its open space plan. Following a hearing, the court rejected both claims and rendered judgment in favor of the city. The city proceeded to acquire the parcel of land on April 4, 2005.

On October 20, 2006, the plaintiff commenced the present action against the city, as well as the defendant, Kulacz, Anglace, and city zoning enforcement officer Thomas Dingle, in both their individual and official capacities. In its third amended complaint,[2] the plaintiff claimed interference with business and contractual expectations and violations of the applicable Connecticut antitrust statutes.

On October 1, 2009, the defendant filed a motion for summary judgment asserting that the present action is

---

[2] The third amended complaint was the operative complaint at the time of the motion for summary judgment.

barred by the doctrine of collateral estoppel because the plaintiff seeks to relitigate issues already determined in the earlier action.[3] After hearing argument on the motion on March 1, 2010, the court subsequently denied the defendant's motion for summary judgment. In its memorandum of decision, the court concluded that collateral estoppel should not bar the plaintiff's action because in the prior proceeding (1) the conduct of the board of aldermen was at issue, not that of the defendant; (2) the court made no findings regarding certain allegations in this case, namely, the issue of the excavation permit; (3) the defendant's ownership of competing property played "at best a tangential role" and (4) neither the judge nor the parties had the benefit of extensive discovery. The defendant's appeal followed.[4]

[3] Because the parties to the injunction action and the parties to the present action are not precisely identical, we review the applicable principles governing who may invoke the doctrine of collateral estoppel to preclude an opposing party from relitigating a claim or issue. The defensive use of the doctrine of collateral estoppel by one who was not a party to the initial proceeding was approved in *Aetna Casualty & Surety Co.* v. *Jones*, 220 Conn. 285, 596 A.2d 414 (1991). "[T]he 'crowning consideration' in collateral estoppel cases and the basic requirement of privity [is] that the *interest of the party to be precluded* must have been sufficiently represented in the prior action so that the application of collateral estoppel is not inequitable." (Emphasis added.) *Mazziotti* v. *Allstate Ins. Co.*, 240 Conn. 799, 818, 695 A.2d 1010 (1997). Here, collateral estoppel is being invoked against a party to the prior proceeding, and, therefore, the privity requirement is not an issue.

[4] "Under Connecticut law, '[t]he denial of a motion for summary judgment ordinarily is an interlocutory ruling and, accordingly, not a final judgment for purposes of appeal.' *Chadha* v. *Charlotte Hungerford Hospital*, 272 Conn. 776, 785, 865 A.2d 1163 (2005). Nevertheless, in *Convalescent Center of Bloomfield, Inc.* v. *Dept. of Income Maintenance*, 208 Conn. 187, 544 A.2d 604 (1988), our Supreme Court held that the denial of a claim for collateral estoppel was 'ripe for immediate appellate review.' Id., 194. The court explained that 'to postpone appellate review and to require further exhaustion of administrative remedies would defeat the very purpose that collateral estoppel is intended to serve. [T]he basic proposition . . . has always been essentially the same: A party should not be allowed to relitigate a matter that it already had opportunity to litigate. . . . [T]he defense of collateral estoppel is a civil law analogue to the criminal law's defense of double jeopardy, because both invoke the right not to have to go to trial on the merits. Like the case of a denial of a criminal defendant's colorable

As a preliminary matter, we set forth the applicable standard of review. Whether the trial court properly declined to invoke the doctrine of collateral estoppel is a question of law over which our review is plenary. *Corcoran* v. *Dept. of Social Services*, 271 Conn. 679, 688, 859 A.2d 533 (2004).

"Collateral estoppel means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit. . . . To assert successfully the doctrine of issue preclusion, therefore, a party must establish that the issue sought to be foreclosed actually was litigated and determined in the prior action between the parties or their privies, and that the determination was essential to the decision in the prior case." (Citation omitted; internal quotation marks omitted.) *Vanliner Ins. Co.* v. *Fay*, 98 Conn. App. 125, 132, 907 A.2d 1220 (2006).[5] "An issue is *actually*

---

double jeopardy claim, where immediate appealability is well established . . . [a] judgment denying [a] claim of collateral estoppel is a final judgment." *Singhaviroj* v. *Board of Education*, 124 Conn. App. 228, 232, 4 A.3d 851 (2010). Accordingly, this appeal is procedurally proper.

[5] We note that it is well established that collateral estoppel is an affirmative defense that may be waived if not properly pleaded. See, e.g., *Wilcox* v. *Webster Ins., Inc.*, 294 Conn. 206, 222, 982 A.2d 1053 (2009) ("[c]ollateral estoppel is an affirmative defense that may be waived if not properly pleaded"); *Sydoriak* v. *Zoning Board of Appeals*, 90 Conn. App. 649, 657, 879 A.2d 494 (2005) (collateral estoppel claim deemed waived due to failure to plead it as special defense); *Carnese* v. *Middleton*, 27 Conn. App. 530, 537, 608 A.2d 700 (1992) ("[c]ollateral estoppel, like res judicata, must be specifically pleaded by a defendant as an affirmative defense"); cf. Practice Book § 10-50 ("res judicata must be specially pleaded" as defense). There is, however, an exception to the general rule that collateral estoppel must be pleaded as an affirmative defense. "The defendants' failure to file a special defense may be treated as waived where the plaintiff fails to make appropriate objection to the evidence and argument offered in support of that defense." *Carnese* v. *Middleton*, supra, 537. In *Singhaviroj* v. *Board of Education*, 124 Conn. App. 228, 234, 4 A.3d 851 (2010), we concluded that the defendant's failure to file a special defense was waived because "the plaintiff at no time objected on the ground of the defendants' failure to properly plead their res judicata and collateral estoppel defenses. To the contrary, the plaintiff argued the merits of those defenses in his opposition

*litigated* if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined. . . . An issue is *necessarily determined* if, in the absence of a determination of the issue, the judgment could not have been validly rendered." (Emphasis in original; internal quotation marks omitted.) *Sellers* v. *Work Force One, Inc.*, 92 Conn. App. 683, 686, 886 A.2d 850 (2005). Therefore, a party may assert the doctrine of collateral estoppel successfully when three requirements are met: "[1] [t]he issue must have been fully and fairly litigated in the first action, [2] it must have been actually decided, and [3] the decision must have been necessary to the judgment." *Busconi* v. *Dighello*, 39 Conn. App. 753, 767–68, 668 A.2d 716 (1995), cert. denied, 236 Conn. 903, 670 A.2d 321 (1996).

"Before collateral estoppel applies there must be an identity of issues between the prior and subsequent proceedings. To invoke collateral estoppel the issues sought to be litigated in the new proceeding must be identical to those considered in the prior proceeding." *Crochiere* v. *Board of Education*, 227 Conn. 333, 345, 630 A.2d 1027 (1993). "[T]he court must determine what facts were necessarily determined in the first trial, and must then assess whether the [party] is attempting to relitigate those facts in the second proceeding." (Internal quotation marks omitted.) *Aetna Casualty & Surety Co.* v. *Jones*, 220 Conn. 285, 297, 596 A.2d 414 (1991). "Simply put, collateral estoppel has no application in the absence of an identical issue." (Internal citation omitted.) *Corcoran* v. *Dept. of Social Services*, supra, 271 Conn. 690. Further, "[t]he [party seeking estoppel] has the burden of showing that the issue whose relitigation he seeks to foreclose was actually decided in the

---

to the motions for summary judgment and at oral argument thereon." Thus, in the present case, despite the defendant's failure to specially plead the defense of collateral estoppel, the court properly could consider it in deciding the motion for summary judgment.

first proceeding." (Internal quotation marks omitted.) *Dowling* v. *Finley Associates, Inc.*, 248 Conn. 364, 377, 727 A.2d 1245 (1999).

The defendant claims that the court improperly denied his motion for summary judgment because it failed to accord collateral estoppel effect to the court's finding in the injunction proceeding that the city had not acted in bad faith. Specifically, the defendant argues that in the injunction proceeding the court necessarily determined two issues that are dispositive in the present action: "(1) the city did not act in 'bad faith' in conjunction with the alleged 'bad acts' of [the defendant] to halt competition; and (2) the taking of the property was a lawful exercise of the power of eminent domain." The defendant therefore asserts that the plaintiff had a full and fair opportunity to litigate these issues. We disagree with the defendant and conclude that the court properly denied the defendant's motion for summary judgment because there is insufficient identity of the issues involved in the actions.

We begin with a review of the issues presented to each court. In the injunction action, the plaintiff claimed that the city (1) failed to meet the requirement that it "exhaust all reasonable efforts to obtain the land it desires by agreement"; (internal quotation marks omitted) *Pequonnock Yacht Club, Inc.* v. *Bridgeport*, 259 Conn. 592, 601, 790 A.2d 1178 (2002); and (2) acted in bad faith. The plaintiff raised several bases for its bad faith claim, including the fact that the city offered the plaintiff $2.3 million for the property but later indicated a willingness to pay $2.5 million, that the city's reasons for acquiring the property were varied, and finally that the defendant "owns land in the city that has also been identified as a potential area for the city to purchase as part of its open space plan." *Wiacek Farms, LLC* v. *Shelton*, supra, Superior Court, Docket No. CV-05-4002169-S.

In the present case, the plaintiff claimed that the defendant improperly interfered with its business expectancy to earn profit from the sale of homes that the plaintiff intended to construct on the parcel of land condemned by the city, and that the defendant violated the Connecticut Antitrust Act; General Statutes § 35-24 et seq.; by seeking to prevent competition. Specifically, the plaintiff's alleged that the defendant tortiously interfered by wrongfully injecting himself into the excavation permit process, advocating at a commission meeting that the plaintiff's subdivision application be denied, causing a stop work order to stall construction work on the subdivision, using his office of mayor to forestall enforcement actions on his own allegedly illegal subdivision, and using his office of mayor to improperly cause the city to take the property by eminent domain.

The issue of whether the defendant caused the plaintiff monetary damages by improperly interfering with its business expectations is sufficiently different than the issue presented for determination in the injunction proceeding. In the injunction proceeding, the issue was whether the city acted in bad faith in the taking of the property, in part because the defendant had an ulterior motive as a property owner of an allegedly competing potential subdivision. In the present action, the issue is the defendant's behavior, especially in connection to the plaintiff's application for an excavation permit, and whether that conduct "constitutes improper, illegal, wrongful, bad faith [or] dishonest acts of interference with [the plaintiff's] contracts and business expectancies." The plaintiff's claims in the present action do not require a showing that the taking of the property by the city was unlawful.

There is some overlap in the facts relevant to the issues. The fact that the defendant owns property in the city that was also identified as a potential area for

the city to purchase as part of its open space plan is pertinent to the determination of both issues. Our Supreme Court has held, however, that an overlap in issues does not necessitate a finding of identity of issues for the purposes of collateral estoppel. "We acknowledge that there was some area of overlap in the issues presented in the two proceedings. . . . [H]owever, the linchpin of collateral estoppel is the identity of the issues decided by both tribunals, and, in the present case, we are not persuaded that the issues are identical. . . . Because we have recognized that applying the doctrine of collateral estoppel has harsh consequences, namely, cutting off a party's right to future litigation on a given issue, we have been reluctant to uphold the invocation of the doctrine unless the issues are completely identical." *Corcoran* v. *Dept. of Social Services*, supra, 271 Conn. 691–94. On the facts in the present case, foreclosing the plaintiff's claim is inappropriate because the issues are not identical.

The issue presented in this case and the issue presented in the injunction proceeding are not sufficiently identical. Accordingly, the court properly concluded that the plaintiff's action is not barred under the doctrine of collateral estoppel.

The judgment is affirmed.

In this opinion the other judges concurred.