# FARMINGTON VALLEY RECREATIONAL PARK, INC., ET AL. *v.* FARMINGTON SHOW GROUNDS, LLC, ET AL.
## (AC 34262)

Lavine, Beach and Keller, Js.

Argued September 20—officially released November 5, 2013

*Claude M. Brouillard*, with whom was *Mei-wa Cheng*, for the appellants (named defendant et al.).

*Patrick E. Scully*, with whom was *Edward F. Scully*, for the appellees (named plaintiff et al.).

*Kevin J. McEleney*, for the appellee (plaintiff Michael A. Ziebka, conservator of the estate of Hugh P. Kerrigan).

*Opinion*

LAVINE, J. In this mortgage foreclosure action, the defendants, Claude M. Brouillard, Farmington Equestrian Center, LLC, and Farmington Show Grounds, LLC,[1] appeal from the judgment of strict foreclosure claiming that the court improperly (1) concluded that the plaintiffs[2] had standing to commence the action and (2) that the plaintiffs had proven and established the debt. We affirm the judgment of the trial court.

---

[1] At trial Stephen M. Jenkins, Jon Jenkins, Jason Jenkins, and Jenkins Management, Inc., and the Town of Farmington also were defendants, but they are not parties to this appeal. Equine Homes Real Estate, LLC, CWPM, LLC, and Saddle River Partners I, LLC, were named as defendants in the complaint but failed to appear at trial. In this opinion, we refer to Brouillard, Farmington Equestrian Center, LLC, and Farmington Show Grounds, LLC, as the defendants.

[2] The plaintiffs are Farmington Valley Recreational Park, Inc., Farmington Polo Grounds, LLC, Hugh P. Kerrigan doing business as Farmington Polo Club, and Michael A. Ziebka, conservator of the estate of Hugh P. Kerrigan. On August 26, 2011, a Suggestion of Death was filed indicating that Kerrigan had died on August 22, 2011. A motion to substitute the executor of his estate, Ziebka, as a party plaintiff was granted by the court.

The record discloses the following procedural history. The plaintiffs commenced this action on August 11, 2009, to foreclose a mortgage on property located at 152 Town Farm Road in Farmington (property), commonly known as the polo grounds, and for money damages. The property consists of approximately sixty acres adjacent to the Farmington River. The defendants filed an answer in which they alleged that they lacked sufficient knowledge to admit or deny the material allegations of the complaint. They also alleged five special defenses and a four count counterclaim against the plaintiffs. The plaintiffs denied the special defenses and the material allegations of the counterclaim and pleaded four special defenses to the counterclaim. The defendants denied the counterclaim special defenses. The case was tried to the court, *Robaina, J.*, over several days in May, 2011. The court issued a memorandum of decision on January 6, 2012.

In its memorandum of decision, the court found the following facts. On or about May 7, 2004, Farmington Valley Recreational Park, Inc. (Park), conveyed the property by warranty deed (deed) to the defendant Farmington Show Grounds, LLC (Show Grounds), in consideration of $2,250,000. The deed reserved a life estate for the benefit of the plaintiff Hugh P. Kerrigan. That same day, Show Grounds executed a promissory note in favor of Park, the plaintiff Farmington Polo Grounds, LLC (Polo Grounds), and Kerrigan doing business as Farmington Polo Club (Polo Club) in the principal amount of $1,000,000. The note was secured by a document entitled "Open End Mortgage Deed and Security Agreement," which mortgaged the property conveyed that day. Show Grounds also executed a conditional assignment of leases and rents in favor of the plaintiffs.[3]

---

[3] The defendants Jon Jenkins, Jason Jenkins, Stephen M. Jenkins, and Jenkins Management, Inc., executed guarantees as security for Show Grounds' debt. Because they are not parties to this appeal, we have omitted

At the time the property was conveyed to Show Grounds, it was subject to two prior mortgages in favor of Farmington Savings Bank (bank): one in the amount of $100,000, and another in the amount of $1,100,000. Both of the prior mortgages were dated May 5, 2004. The court found that by means of an "inter-creditor agreement" dated May 7, 2004, executed by Show Grounds, the bank, Kerrigan, Polo Grounds, and Park, the note payable to Kerrigan, Polo Club, Polo Grounds, and Park, was subordinated to the loan from the bank to Show Grounds.

Brouillard acquired title to the property from Show Grounds by warranty deed dated June 11, 2007. The property was conveyed subject to the May 5, 2004 mortgages. Brouillard also executed an instrument in favor of the bank entitled "Debt Assumption and Loan Modification Agreement" (modification agreement), which is dated August 10, 2007. In addition to the assumption of debt, the modification agreement increased the amount of the first mortgage to the bank by $300,000.

Pursuant to its analysis, the court found that the plaintiffs had proven that they were the holders of the note dated May 7, 2004, in the principal amount of $1,000,000, which is secured by a mortgage signed by Show Grounds. The defendants had defaulted on that note for nonpayment, and the plaintiffs had made demand for the balance due in accordance with the terms of that note.

The court found the amount due under the terms of the note to be $1,052,624 as of May 7, 2009, and that the plaintiffs have waived interest and fees subsequent to that date. The court also found that the fair market value of the property to be $1,330,000. The court concluded that the defendants had failed to prove their special defenses or their counterclaim against the plain-

---

any discussion of the court's findings and legal conclusions as to the Jenkins parties.

tiffs. The court rendered judgment in favor of the plaintiffs on the complaint and counterclaim and ordered the plaintiffs to claim the matter for a hearing with respect to a judgment of foreclosure.[4]

I

The defendants first claim that the court erred as a matter of law in finding that the plaintiffs had proven

[4] On January 26, 2012, the defendants filed the present appeal, challenging the court's conclusions with respect to the allegations of the complaint and the counterclaim. On February 2, 2012, the plaintiffs filed a motion to dismiss the appeal for lack of a final judgment, arguing that there was no final judgment as to the complaint at the time the appeal was filed because the trial court had not yet set law days for a judgment of strict foreclosure. See General Statutes § 52-263 (appeal may be taken from final judgment). This court granted the motion to dismiss that portion of the defendants' appeal concerning the foreclosure complaint, but denied the motion to dismiss as to that portion of the appeal concerning the defendants' counterclaim. The defendants have not briefed any issue related to the judgment rendered on their counterclaim, and we therefore consider it abandoned. See *Merchant* v. *State Ethics Commission*, 53 Conn. App. 808, 818, 733 A.2d 287 (1999).

After the defendants filed their appeal, on February 1, 2012, the plaintiffs filed a motion to set law days. The trial court granted the motion and set the law day for March 26, 2012. On February 14, 2012, the plaintiffs filed an amended motion to set the law days, which the trial court granted and set a new law day of April 9, 2012. On March 7, 2012, the defendants filed an amended appeal seeking to challenge the court's decision dated January 6, 2012, and its subsequent setting of a law day. On March 21, 2012, the defendants filed a second amended appeal challenging the court's January 6, 2012 decision and the setting of law days.

"[A] judgment of foreclosure is not a final judgment until the trial court determines the method of foreclosure and the amount of the debt." *Capp Industries, Inc.* v. *Schoenberg*, 104 Conn. App. 101, 109 n.5, 932 A.2d 453, cert. denied, 284 Conn. 941, 937 A.2d 696 (2007). In its memorandum of decision issued on January 6, 2012, the court found the debt by stating "[t]he court finds that the amount due under the terms of the note is $1,052,624 as of May 7, 2009. The plaintiffs have waived interest and fees subsequent to that date." Under the particular facts and circumstances of this case, although the court did not render a formal judgment of foreclosure, we conclude that in setting the law days, the court implicitly rendered a judgment of strict foreclosure. See *Connecticut National Bank* v. *L & R Realty*, 40 Conn. App. 492, 493, 671 A.2d 1315 (1996) (setting of law days necessary for final judgment in strict foreclosure).

Our law provides, however, that "[i]f the original appeal is dismissed for lack of jurisdiction, the amended appeal shall remain pending if it was filed

ownership of the May 7, 2004 note and had standing to bring the action against them. The plaintiffs argue that the defendants failed to raise this claim at trial and therefore the claim is not reviewable. See Practice Book § 60-5. We agree that the record does not demonstrate that the defendants raised the claim at trial, and, ordinarily, we would not review a claim that was not raised in the trial court. See *Willow Springs Condominium Assn., Inc.* v. *Seventh BRT Development Corp.*, 245 Conn. 1, 33, 717 A.2d 77 (1998). The defendants' claim, however, implicates the trial court's subject matter jurisdiction. On the basis of our review of the record, we conclude that the defendants' claim fails.

"Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. . . . [Our Supreme Court] has often stated that the question of subject matter jurisdiction, because it addresses the basic competency of the court, can be raised by any of the parties, or by the court sua sponte, at any time." (Citation omitted; internal quotation marks omitted.) *Webster Bank* v. *Zak*, 259 Conn. 766, 774, 792 A.2d 66 (2002). Standing is a question of law and our review of such questions is plenary. See *Pond View, LLC* v. *Planning & Zoning Commission*, 288 Conn. 143, 155, 953 A.2d 1 (2008).

Our Supreme Court has held that "[the] holder of a note is presumed to be the owner of the debt . . . ." *RMS Residential Properties, LLC* v. *Miller*, 303 Conn. 224, 231, 32 A.3d 307 (2011). "The possession by the bearer of a note indorsed in blank imports prima facie

---

from a judgment or order from which an original appeal properly could have been filed." Practice Book § 61-9; see also *Midland Funding, LLC* v. *Tripp*, 134 Conn. App. 195, 196 n.1, 38 A.3d 221 (2012). We therefore conclude that the defendants' appeal is properly before us.

that he acquired the note in good faith for value and in the course of business, before maturity and without notice of any circumstances impeaching its validity. The production of the note establishes his case prima facie against the makers and he may rest there. . . . It [is] for the defendant to set up and prove the facts which limit or change the plaintiff's rights." (Citations omitted; internal quotation marks omitted.) *Garris* v. *Calechman*, 118 Conn. 112, 115, 170 A. 789 (1934).

The record discloses that the plaintiffs placed into evidence without objection the signed note and the signed mortgage deed and security agreement. The defendants have failed to direct our attention to an objection or challenge to the prima facie evidence that the plaintiffs owned that note. Moreover, the court found that the plaintiffs had proved that they were the holders of the note. This court does not reverse the factual findings of a trial court unless the appellant demonstrates that the court's finding is clearly erroneous. See *National Grange Mutual Ins. Co.* v. *Santaniello*, 290 Conn. 81, 90, 961 A.2d 387 (2009). In view of the record before us, the defendants have not demonstrated that the court's finding was clearly erroneous. We conclude, therefore, that the plaintiffs had standing to commence the present action to foreclose the mortgage on the property.

## II

The defendants claim that the court improperly determined the amount of the debt.[5] We disagree.

The following additional facts are necessary to our resolution of the defendants' claim. At trial, the defendants claimed that the amount of the debt had been

---

[5] The defendants also claim that the court improperly failed to apply the "one transaction rule" in finding that the parties had not agreed to reduce the debt. The defendants failed to brief that claim and we therefore consider it abandoned. See *Roby* v. *Connecticut General Life Ins. Co.*, 166 Conn. 395, 398 n.1, 349 A.2d 838 (1974).

reduced by the modification agreement of August 10, 2007. Judge Robaina found that the modification agreement was executed by Brouillard, Farmington Equestrian Center, and the bank and that none of the plaintiffs was a party to the modification agreement. The modification agreement, therefore, did not reduce the amount owed by the defendants to the plaintiffs.

The defendants claimed, however, that the issue of whether the amount of the note had been modified had been litigated in the case of *Farmington Savings Bank* v. *Brouillard*, Superior Court, judicial district of Hartford, Docket No. CV-08-5025089-S (January 26, 2011) (bank's case). In its memorandum of decision in the bank's case, the court, *Hon. Robert Satter*, judge trial referee, stated "[t]he original Kerrigan purchase mortgage note of $1,000,000 was reduced to $700,000 and amortized over thirty years rather than the original ten years."

In his memorandum of decision, Judge Robaina stated that he had searched the documents and exhibits submitted in the bank's case and found no evidence to support the defendants' claim that the amount of the debt the defendants owed the plaintiffs had been reduced.[6] The court concluded that the subject statement in Judge Satter's memorandum of decision was dicta and not necessary to the resolution and judgment in the bank's case. We agree with Judge Robaina that the statement was not necessary to the judgment in the bank's case where the bank was seeking to foreclose the mortgage it held on the property, not the mortgage the plaintiffs held.[7]

---

[6] Judge Robaina also stated that although the defendants offered evidence of negotiations between the parties to reduce the principal amount of the note, no agreement was reached. Specifically he found that "[t]here is no written agreement which provides that the mortgage to the plaintiffs was modified."

[7] Our search of the record discloses no evidence of an agreement between the parties in this action that the amount of the debt due the plaintiffs had

The essence of the defendants' claim is that the amount of the debt was decided by Judge Satter in the bank's case and therefore the issue is res judicata. "[T]he applicability of res judicata and collateral estoppel presents a question of law over which [the court] employ[s] plenary review." *Weiss* v. *Weiss*, 297 Conn. 446, 458, 998 A.2d 766 (2010).

"[T]he doctrine of res judicata, or claim preclusion, [provides that] a former judgment on a claim, if rendered on the merits, is an absolute bar to a subsequent action on the same claim." (Internal quotation marks omitted.) *Tirozzi* v. *Shelby Ins. Co.*, 50 Conn. App. 680, 685, 719 A.2d 62, cert. denied, 247 Conn. 945, 723 A.2d 323 (1998). The doctrine of res judicata applies if the following elements are satisfied: the identity of the parties to the actions are the same; the same claim, demand or cause of action is at issue; the judgment in the first action was rendered on the merits; and the parties had an opportunity to litigate the issues fully. Id., 686–87. Res judicata does not apply in the present case because the claim in the bank's case is not the claim asserted by the plaintiffs in this case. The issue to be determined in the bank's case was the amount of the debt the defendants owed the bank, not the debt owed the plaintiffs in this case.

"The common-law doctrine of collateral estoppel, or issue preclusion, embodies a judicial policy in favor of judicial economy, the stability of former judgments and finality. . . . Collateral estoppel, or issue preclusion, is that aspect of res judicata which prohibits the relitigation of an issue when that issue was actually litigated and *necessarily determined* in a prior action between the same parties upon a different claim. . . . For an issue to be subject to collateral estoppel, it must have

---

been reduced and the defendants have directed us to no written agreement in the record.

been fully and fairly litigated in the first action. It also must have been actually decided and *the decision must have been necessary to the judgment.*" (Citations omitted; emphasis altered; internal quotation marks omitted.) *Lafayette* v. *General Dynamics Corp.*, 255 Conn. 762, 772, 770 A.2d 1 (2001).

"An issue is *necessarily* determined if, in the absence of a determination of the issue, the judgment could not have been validly rendered. . . . If an issue has been determined, but the judgment is not dependent upon the determination of the issue, the parties may relitigate the issue in a subsequent action. *Findings on nonessential issues usually have the characteristics of dicta.*" (Citation omitted; emphasis altered.) *Jackson* v. *R. G. Whipple, Inc.*, 225 Conn. 705, 714–15, 627 A.2d 374 (1993). Although Judge Satter may have concluded, or at least stated, that the debt the defendants owed the plaintiffs had been reduced by $300,000, that was not an issue that needed to be determined in the bank's case. We therefore conclude that the court properly determined that Judge Satter's statement regarding the amount of the debt the defendants owed the plaintiffs is mere dicta.

The judgment is affirmed and the case is remanded for the purpose of setting new law days.

In this opinion the other judges concurred.