******************************************
The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

Alvord, Bentivegna and Pellegrino, Js.

*Syllabus*

The plaintiff bank sought to pierce the corporate veil of the defendant
corporation, S Co., and to enforce an English court's judgment against
the individual defendant, V, the sole shareholder and director of S Co.
The plaintiff had commenced an action in England against S Co., seeking
damages for moneys owed to it in connection with various trading losses
incurred by S Co. in relation to accounts that it had opened and operated
through the plaintiff. In response, S Co. filed a counterclaim, alleging,
inter alia, that the plaintiff had breached certain contractual duties that
it had owed to S Co., which resulted in the depletion of funds that S
Co. could have used to mitigate its losses. The English court denied S
Co.'s counterclaim, finding that the plaintiff had not breached its duties
to S Co. and that V had control over S Co. such that any alleged breach
of duty should not have interfered with V's ability to transfer funds to
or from S Co. The English court rendered judgment for the plaintiff,
awarding it damages plus interest. Thereafter, the plaintiff filed a non-
party costs application with the English court, seeking to hold V person-
ally liable for certain of the plaintiff's court costs in its action against
S Co. The English court granted the costs application, concluding that
V was liable for the costs incurred by the plaintiff due to his extensive
involvement in the action against S Co. In response to S Co.'s failure
to make payments in accordance with the judgment, the plaintiff com-
menced the present action. Thereafter, the defendants filed a motion
for summary judgment, claiming that the doctrine of res judicata barred
the plaintiff's corporate veil piercing claim because it should have been
raised in the action in the English court. The plaintiff filed a separate
motion for summary judgment, arguing that all questions of material
fact with respect to its corporate veil piercing claim previously had been
decided by the English court and that V was collaterally estopped from
denying that he was the alter ego of S Co. and personally liable for the
judgment in the English action. The trial court denied the parties'
motions, concluding that the plaintiff's corporate veil piercing claim was
not barred by res judicata because that claim was sufficiently different in
nature from the breach of contract claims in the English action, and
that V was not collaterally estopped from denying liability for S Co.'s
debt because the issue was not actually or necessarily decided in the
English action. From the trial court's judgment, the parties filed separate
appeals with this court. *Held*:

1. The defendants could not prevail on their claim that the trial court improp-
erly denied their motion for summary judgment because the plaintiff's
corporate veil piercing claim arose out of the same series of transactions
as the English action and should have been raised in the English action,
and, therefore, was barred by the doctrine of res judicata: the plaintiff's
corporate veil piercing claim was not barred by the doctrine of res
judicata, the claims litigated in the English action and the claims alleged
in the present action having been distinct, as the plaintiff in the present
action was not seeking to relitigate a claim of contractual liability that
previously had been decided in the English action but, rather, was
seeking to enforce the unsatisfied English judgment against V under a
corporate veil piercing theory.

2. There was no merit to the plaintiff's claim that the trial court improperly
denied its motion for summary judgment on the ground that the issue
of whether V was the alter ego of S Co. previously had been decided
by the English court and, thus, the doctrine of collateral estoppel pre-
cluded the defendants from relitigating that issue: the facts relevant to
the issues in the English action and those in the present action were
not identical for purposes of issue preclusion, and the issues pertaining
to V's control of S Co., as found by the English court, were not essential

to the English action because the English court's finding that the plaintiff did not breach any duties it owed to S Co. was essential only to the English court's resolution of S Co.'s counterclaim; moreover, although the English court made factual findings relating to V's dominion and control of S Co. when it awarded costs against V, the sole purpose of the costs judgment was to determine whether V, as a nonparty, could be held liable for costs and attorney's fees incurred during the litigation of the English action, and the costs proceeding was a summary process proceeding that did not afford the parties basic procedural safeguards, including the presentation and cross-examination of witnesses, and the English court explicitly noted that the issues in determining a nonparty costs order were not the same as a corporate veil piercing claim.

Argued February 2—officially released July 18, 2017

(Appeal from Superior Court, judicial district of Stamford-Norwalk, Complex Litigation Docket, Genuario, J.)

*Procedural History*

Action to pierce the corporate veil of the named defendant and to hold the defendant Alexander Vik liable for an unsatisfied foreign judgment, and for other relief, brought to the Superior Court in the judicial district of Stamford-Norwalk, Complex Litigation Docket, where the court, *Genuario, J.*, denied the defendants' motion to dismiss; thereafter, the court denied the defendants' motion to strike; subsequently, the court denied the plaintiff's motion for summary judgment and denied the defendants' motion for summary judgment, and the plaintiff and the defendants filed separate appeals in this court; thereafter, this court granted in part the defendants' motion to dismiss the plaintiff's appeal. *Affirmed.*

*Richard M. Zaroff*, with whom were *Thomas P. O'Connor*, *Wyatt R. Jansen*, and, on the brief, *Charles W. Pieterse* and *Ira S. Zaroff*, for the appellants in AC 38515 and appellees in AC 38516 (defendants).

*David G. Januszewski*, with whom were *Thomas D. Goldberg*, and, on the brief, *Bryan J. Orticelli*, *Sheila C. Ramesh*, and *Erin R. McAlister*, for the appellee in AC 38515 and appellant in AC 38516 (plaintiff).

*Opinion*

PELLEGRINO, J. These appeals arise from an action to recover an approximately $243 million judgment (English judgment) rendered by the Queen's Bench Division of the High Court of Justice of England and Wales (English court) in an action captioned *Deutsche Bank AG* v. *Sebastian Holdings, Inc.* (English action) in which the trial court rendered judgment in favor of the plaintiff, Deutsche Bank AG, against the corporate defendant, Sebastian Holdings, Inc. (Sebastian). In the present action, the plaintiff sought to pierce Sebastian's corporate veil and to enforce the English judgment against the individual defendant, Alexander Vik. The defendants and the plaintiff moved for summary judgment based on the doctrines of res judicata and collateral estoppel, respectively. On appeal, the parties claim that the trial court improperly denied their respective motions for summary judgment.[1] We affirm the judgment of the trial court.

The trial court found the following facts. On January 1, 2009, the plaintiff commenced the English action against Sebastian, a corporation organized under the laws of the Turks and Caicos Islands, seeking damages for moneys that it was allegedly owed in connection with various trading losses incurred by Sebastian through accounts that it had opened and operated through the plaintiff. Sebastian incurred various debts owed to the plaintiff through unpaid margin calls and closeouts of its accounts with the plaintiff. Following a forty-five day trial, the English court rendered judgment in favor of the plaintiff in the amount of $243,023,089 plus interest.

Subsequent to the English judgment, the plaintiff filed a nonparty costs application with the English court, seeking to hold Vik, the sole shareholder and director of Sebastian, personally liable for portions of the plaintiff's court costs. On June 24, 2014, the English court issued its decision (English costs judgment) in which it concluded that Vik was personally liable for the costs incurred by the plaintiff due to his extensive involvement with the English action.[2] It therefore granted the costs application.

On December 13, 2013, the plaintiff commenced the present action to enforce the English judgment against Vik following Sebastian's failure to make payments on the English judgment. Specifically, the plaintiff sought (1) a declaratory judgment seeking to pierce Sebastian's corporate veil and to hold Vik personally liable for the amounts due under the English judgment, and (2) to enforce the English judgment against Vik under the Uniform Foreign Money Judgments Recognition Act, as adopted in Connecticut.[3]

Following a period of discovery, on August 21, 2015, the defendants and the plaintiff both moved for sum-

mary judgment. In their motion, the defendants argued that res judicata barred the present action because the plaintiff's claim seeking to pierce the corporate veil should have been raised in the English action. The plaintiff, by contrast, argued in its motion that all questions of material fact with respect to its veil piercing claim previously had been decided by the English court and that Vik was collaterally estopped from denying that he is the "alter ego" of Sebastian and personally liable for the English judgment. On October 22, 2015, by way of written memorandum of decision, the trial court denied both parties' motions for summary judgment.

With respect to the defendants' motion for summary judgment, the court concluded that the plaintiff's veil piercing claim was not barred by the doctrine of res judicata because that claim was sufficiently different in nature from the breach of contract claims in the English action. With respect to the plaintiff's motion for summary judgment, the court concluded that Vik was not collaterally estopped from denying liability for Sebastian's debt because the issue was not actually or necessarily decided in the English action. From the court's judgment, the parties now appeal.[4]

We begin by setting forth our standard of review. "Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law. . . . On appeal, we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court." (Internal quotation marks omitted.) *Savvidis* v. *Norwalk*, 129 Conn. App. 406, 409–410, 21 A.3d 842, cert. denied, 302 Conn. 913, 27 A.3d 372 (2011). Thus, our review of the trial court's judgment denying the parties' motions for summary judgment is plenary. See id., 410.

I

AC 38515

We turn first to the defendants' appeal in which they claim that the trial court improperly denied their motion for summary judgment because the plaintiff's veil piercing claim was barred by the doctrine of res judicata. Specifically, the defendants argue that the plaintiff's veil piercing claim arises out of the same series of transactions as the English action and should have been

raised in the English action. We disagree.

In denying the defendants' motion for summary judgment, the trial court stated: "The fact that certain evidence will need to be presented in the case at bar which was previously presented in the English action is insufficient to invoke the doctrine of res judicata. A piercing the corporate veil claim is different in nature and involves a different type of claim than the original contract claim asserted in the English action. The court also observes that Vik was not a party in the English action until the [nonparty costs] proceedings[5] . . . . The court also observes that the facts and evidence which the defendants claim should bar the plaintiff's subsequent action were matters that were probative of the defendants' counterclaim and not the plaintiff's original contractual assertions. The plaintiff brought the English action against [Sebastian] only asserting a contractual claim against [Sebastian]. [Sebastian's] assertion of claims that broadened the evidence (claims that the English court did not find meritorious) should not serve to bar the plaintiff's subsequent action to enforce its judgment against one who allegedly depleted the assets of [Sebastian] rendering it unable to pay its debts. Accordingly the court holds that the plaintiff's claim is not barred by the doctrine of res judicata." (Footnote added.)

In so doing, the court concluded that "the action brought by the plaintiff herein is different in nature than the English action. Thus, although the facts at issue in the [English] action overlap with the facts at issue in this case, the differences are more significant than mere shadings of fact. Instead the cases lack a common nucleus of operative facts." (Internal quotation marks omitted.)

The following legal principles guide our discussion. "In deciding whether the doctrine of res judicata is determinative, we begin with the question of whether the second action stems from the same transaction as the first. [Our Supreme Court has] adopted a transactional test as a guide to determining whether an action involves the same claim as an earlier action so as to trigger operation of the doctrine of res judicata. [T]he claim [that is] extinguished [by the judgment in the first action] includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose. What factual grouping constitutes a transaction, and what groupings constitute a series, are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage. . . . *Orselet* v. *DeMatteo*, [206 Conn. 542, 545–46, 539 A.2d 95 (1988)];

see *Duhaime* v. *American Reserve Life Ins. Co.*, 200 Conn. 360, 364–65, 511 A.2d 333 (1986); see also *Nevada* v. *United States*, 463 U.S. 110, 130–31 n.12, 103 S. Ct. 2906, 77 L. Ed. 2d 509 (1983); 1 Restatement (Second), [Judgments, § 24 (1982)]. In applying the transactional test, we compare the complaint in the second action with the pleadings and the judgment in the earlier action." (Internal quotation marks omitted.) *Powell* v. *Infinity Ins. Co.*, 282 Conn. 594, 604, 922 A.2d 1073 (2007).

With regard to that test, it appears that neither party disputes that the first two requirements are satisfied: (1) the English action resulted in a valid, final judgment rendered on the merits; and (2) the English action and the present action were between the same parties. See *Coyle Crate LLC* v. *Nevins*, 137 Conn. App. 540, 548, 558 (2012). Thus, we need only address the third requirement, that is, whether the plaintiff's veil piercing claims arose from the same transaction and should have been raised in the English action.

The substance of the plaintiff's claim in the present action is that Vik is Sebastian's "alter ego," and, as a result, he is personally liable for the unsatisfied English judgment. In the English action, the plaintiff alleged various claims against Sebastian arising from their contractual relationship. Although this precise issue has been scarcely discussed by the courts of this state, we agree with the trial court that *Wells Fargo Bank, N.A.* v. *Konover*, United States District Court, Docket No. 3:05CV1924 (CFD) (D. Conn. March 20, 2008) (2008 U.S. Dist. Lexis 21506), provides guidance.

In *Wells Fargo Bank, N.A.*, the plaintiff bank obtained a judgment rendered by a Maryland court against several corporate defendants, including Konover Management Company, for a breach of a mortgage agreement. Id., *2. Following the defendants' failure to satisfy the judgment, the plaintiff brought an action before the federal court to enforce the Maryland judgment against an individual, Michael Konover, and his various other entities, under a corporate veil piercing theory. Id.

In the action to enforce the Maryland judgment, the plaintiff alleged that the individual Connecticut defendant used his control over the entities named in the Maryland judgment to drain funds from those entities. Id. The court analyzed the complaint in the judgment enforcement action and stated: "Counts 1 and 2 are clearly addressed at recovering for a loss distinct from those at issue in Maryland. The claims here are based on the Judgment Debtor's inability to satisfy the Maryland judgment, rather than the mortgage default underlying that judgment." Id., *4. The court concluded that although "the facts at issue in the Maryland action overlap with the facts at issue in this case, the differences are more significant than mere shadings of facts. Instead, the cases lack a common nucleus of operative

facts." (Internal quotation marks omitted.) Id.

The circumstances in the present case are nearly identical to those in *Wells Fargo Bank, N.A.* In essence, the respective plaintiffs in both cases had secured a prior judgment in their favor and sought to enforce that judgment through a corporate veil piercing claim in a subsequent action. The actual claim advanced in the present case is that the plaintiff suffered a loss based upon nonpayment of the judgment rendered by the English court. In our view, the present action is not seeking to relitigate the various claims that gave rise to Sebastian's liability in the English action, but seeking to enforce that judgment. This becomes even more evident when examining the governing law pertaining to the plaintiff's veil piercing claims.

Prior to the parties' respective motions for summary judgment, the defendants moved to strike the complaint "arguing that the substantive law of [the] Turks and Caicos [Islands] must apply to the claims made that the corporate veil between Vik and [Sebastian] should be pierced since [Sebastian] is a corporation organized and existing under the laws of [the] Turks and Caicos [Islands]. The defendants further argue[d] that under that applicable Turks and Caicos [Islands'] law the allegations of the complaint are insufficient to state a cause of action pursuant to which the corporate veil between Vik and [Sebastian] may be pierced." The court concluded that the applicable law to be applied to the plaintiff's veil piercing claim was the law of the Turks and Caicos Islands and that the plaintiff sufficiently pleaded a cause of action.

In its memorandum of decision denying the defendants' motion to strike, the court stated: "In determining the elements and parameters of [the Turks and Caicos Islands] law with regard to piercing the corporate veil the affidavit relies on decisions of English courts. The court has reviewed the affidavit submitted by the defendants as well as an affidavit submitted by the plaintiff, signed by an individual who is a solicitor admitted to practice in England and Wales. Both affidavits purport to set forth the law as developed in England and therefore applicable to [the Turks and Caicos Islands] with regard to attempts to pierce a corporate veil. Having reviewed those affidavits, as well as other authorities, the court concludes that the plaintiff has adequately alleged a cause of action under [the Turks and Caicos Islands'] law. The affidavits submitted by the defendants indicate that a corporate veil can be pierced only if there is some 'impropriety and that such impropriety must be linked to the use of the companies' structure to avoid or conceal liability.' The affidavits suggest that in order to pierce a veil it is necessary that the plaintiff show both control of the company by wrongdoers and an impropriety that constitutes a misuse of the company by them as a device or facade to conceal their wrongdo-

ing. The defendants' affidavit additionally states that a company can be a facade even though it was not originally incorporated with any deceptive intent. Rather, the question is whether it is being used as a facade at the time of a relevant transaction. If so, the court may pierce the veil only so far as it is necessary to provide a remedy for the particular wrong which those controlling the company have done."

The trial court's discussion is helpful in resolving the present appeal because it delineates the elements that the plaintiff must prove in its claim in the present case and the stark differences from the claims in the English action. It is clear to this court that the claims litigated in the English action and those claims alleged in the present case are distinct. For example, in prevailing on its claims in the English action, the plaintiff was not required to prove that Vik demonstrated control over Sebastian and impermissibly drained its assets. Simply put, the plaintiff in present action is not seeking to relitigate a claim of contractual liability that previously was decided in the English judgment. Instead, the plaintiff's claims here are seeking to enforce the unsatisfied English judgment against Vik under a corporate veil piercing theory.

In sum, the claims alleged in the English action and those alleged in the present action arise from a distinct nucleus of operative facts. It is also worth noting that Sebastian's refusal to satisfy the judgment left the plaintiff in the precarious position of pursuing alternative methods of enforcing the judgment, that being an enforcement action seeking to pierce Sebastian's corporate veil. Requiring the plaintiff to have pursued such a claim in the English action would produce an unjust result, as the plaintiff would have been required to have anticipated that Sebastian would refuse to satisfy the English judgment. See *Gladysz* v. *Planning & Zoning Commission*, 256 Conn. 249, 261, 773 A.2d 300 (2001) (courts must ensure "that the effect of the doctrine does not work an injustice"). We thus conclude that the plaintiff's veil piercing claim is not barred by the doctrine of res judicata. Accordingly, the trial court properly denied the defendants' motion for summary judgment.

## II

### AC 38516

We next consider the plaintiff's appeal in which it claims that the trial court improperly denied its motion for summary judgment. The plaintiff argues that the court's denial of its motion was improper because the issue of whether Vik is the "alter ego" of Sebastian previously was decided by the English court and that the doctrine of collateral estoppel precluded the defendants from litigating that issue. We disagree.

In its memorandum of decision denying the plaintiff's

motion for summary judgment, the court stated: "While it is clear that [the English court] in issuing [its] decision rendering the English judgment did conclude that Vik was in control of the funds and caused them to be transferred out of [Sebastian] to make them harder to reach, [it] did so as a component of [its] decision denying [Sebastian's] counterclaim against the plaintiff. In the English action, [Sebastian] counterclaimed against the plaintiff claiming that the plaintiff had breached duties and contractual obligations to [Sebastian] which resulted in funds not being available to [Sebastian] from which it could have minimized its losses. [the English court] concluded that the plaintiff had not breached its contract or any other duties to [Sebastian], and, therefore, the plaintiff was not liable to [Sebastian] for those breach of contractual or other duties. [The English court] additionally found that because Vik was in control of the funds that had been transferred out of [Sebastian], Vik could have transferred those funds back to [Sebastian] at anytime thereby undercutting [Sebastian's] claim that the failure of [Sebastian] to have access to funds caused it significant damages. But this was unnecessary to the court's conclusion since the court had already determined that the plaintiff had not breached any duties to [Sebastian]. Moreover the issue decided by [the English court] was not whether or not Vik was the alter ego of [Sebastian] and liable for [Sebastian's] debts but only that he was still able to control the transfer of funds that had been transferred out of [Sebastian] and, therefore, could have avoided damage. To be sure in [its] lengthy and thorough decision, [the English court] took a dim view of Vik's conduct and integrity but that is insufficient to establish the collateral estoppel necessary to grant summary judgment for the plaintiff."

Our resolution of the plaintiff's appeal is governed by the following legal principles. "Collateral estoppel means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit. . . . To assert successfully the doctrine of issue preclusion, therefore, a party must establish that the issue sought to be foreclosed actually was litigated and determined in the prior action between the parties or their privies, and that the determination was essential to the decision in the prior case. . . . An issue is *actually litigated* if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined. . . . An issue is *necessarily determined* if, in the absence of a determination of the issue, the judgment could not have been validly rendered. . . . Therefore, a party may assert the doctrine of collateral estoppel successfully when three requirements are met: [1] [t]he issue must have been fully and fairly litigated in the first action, [2] it must have been actually decided, and [3] the decision must

have been necessary to the judgment. . . .

"Before collateral estoppel applies there must be an identity of issues between the prior and subsequent proceedings. To invoke collateral estoppel the issues sought to be litigated in the new proceeding must be identical to those considered in the prior proceeding. [T]he court must determine what facts were necessarily determined in the first trial, and must then assess whether the [party] is attempting to relitigate those facts in the second proceeding. Simply put, collateral estoppel has no application in the absence of an identical issue. Further, [t]he [party seeking estoppel] has the burden of showing that the issue whose relitigation he seeks to foreclose was actually decided in the first proceeding." (Citations omitted; emphasis in original; footnote omitted; internal quotation marks omitted.) *Wiacek Farms, LLC* v. *Shelton*, supra, 132 Conn. App. 168–70, 30 A.3d 27 (2011).

We begin with a review of the issues presented to each court. In the English action, the plaintiff claimed that Sebastian suffered trading losses through the use of accounts opened and operated through the plaintiff. Those losses led to Sebastian incurring debts owed to the plaintiff as a result of unpaid margin calls and closeouts of Sebastian's accounts with the plaintiff. In the present case, the plaintiff claimed that Vik was personally liable for Sebastian's debts because he was Sebastian's "alter ego" due to, inter alia, his domination and control of Sebastian.

It is apparent to this court that the facts relevant to the issues in the English judgment and those in the present case are not "identical" for purposes of issue preclusion. See *Corcoran* v. *Dept. of Social Services*, 271 Conn. 679, 689–90, 859 A.2d 533 (2004). Our resolution of the plaintiff's appeal, however, is complicated by the English court's disposition of Sebastian's counterclaims and the postjudgment award of costs rendered against Vik.

First, Sebastian made several counterclaims in the English action. Sebastian counterclaimed that the plaintiff breached its contractual duties and other duties that it owed to Sebastian that, in turn, resulted in the depletion of Sebastian's funds that it could have used to mitigate its losses. In denying Sebastian's counterclaim, the English court found both that (1) the plaintiff did not breach its duties to Sebastian, contractual or otherwise, and (2) Vik had control over Sebastian such that any alleged breach of duty on behalf of the plaintiff should not have interfered with Vik's ability to transfer funds to or from Sebastian.

In its memorandum of decision, the trial court noted that the English court's findings relating to Vik's control of Sebastian and that Vik could have transferred funds back to Sebastian were "unnecessary to the court's

conclusion since the court had already determined that the plaintiff had not breached any duties to [Sebastian]." We agree with this assessment. Because only those issues that were necessarily determined by the English court could invoke the doctrine of collateral estoppel, the English court's finding that the plaintiff did not breach any duties it owed to Sebastian was the only essential issue determined by the English court pertaining to the counterclaim. See *Gladysz* v. *Planning & Zoning Commission*, supra, 256 Conn. 260. Thus, we decline to afford any preclusive effect to the issues pertaining to Vik's control of Sebastian and related issues because those issues found by the English court were nonessential. See *Farmington Valley Recreational Park, Inc.* v. *Farmington Show Grounds, LLC*, 146 Conn. App. 580, 589, 79 A.3d 95 (2013).

Second, the English court also made factual findings relating to Vik's dominion and control of Sebastian when it awarded postjudgment costs against Vik. In our view, the factual findings underlying the English costs judgment cannot serve as the grounds for invoking the doctrine of collateral estoppel for two reasons: (1) the sole purpose of the English costs judgment was to determine whether a nonparty, Vik, could be held liable for costs and attorney's fees incurred during the litigation of the English action; and (2) the English costs proceeding did not afford the parties basic procedural safeguards, including presentation and cross-examination of witnesses.

In its memorandum of decision as to the costs judgment, the English court noted that under the applicable provision that gives rise to the costs proceeding, § 51,[6] the critical factor is the nature and degree of the nonparty's connection with the proceedings. See *Deutsche Bank AG* v. *Sebastian Holdings, Inc.*, [2004] EWHC 2073 (Q.B.). The English court further stated, "[a]s is plain from a number of authorities, an application under [§] 51 does not involve the assertion of a cause of action but is a request for the exercise by the English court of a statutory discretion in relation to the proceedings in which the court already has jurisdiction and, as here, has usually already given judgment against a party subject to that jurisdiction." Id.

It is apparent to this court that § 51 proceedings do not afford the parties the same procedural safeguards as the parties were afforded when they litigated the underlying merits in the English action or that the parties are afforded in the present case. Specifically, "[t]he procedure for the determination of costs is a summary procedure, not necessarily subject to all the rules that would apply in an action." Id. The English court observed that "[§] 51 proceedings are intended to be a 'speedy process' where disclosure and cross-examination are not ordinarily part of the procedure." Id. Although the court could have exercised its discretion

to allow disclosure and cross-examination, the English court instead relied solely on its findings from the English judgment.

In light of the lack of procedural safeguards afforded to a § 51 proceeding, we decline to apply preclusive effect to the issues in the present case. Our courts have declined to apply the doctrine of collateral estoppel to findings made in proceedings where "the panoply of procedural and discovery devices available in civil proceedings [were] not equally available . . . ." *Connecticut Natural Gas Corp.* v. *Miller*, 239 Conn. 313, 321–22, 684 A.2d 1173 (1996); see also *Gateway* v. *Kelso & Co.*, 126 Conn. App. 578, 587, 15 A.3d 635 (2011) (declining to invoke collateral estoppel where court permitted only plaintiff's witness to testify, defendant was not allowed to call any witnesses, and defendant was not permitted to complete cross-examination of plaintiff's witness). As best we can tell from the record before us, the English costs judgment was the result of a summary proceeding that did not afford the parties the ability to present new evidence, to call witnesses, or to cross-examine witnesses. Moreover, the English court explicitly noted that the issues in determining a nonparty costs order were not the same as a corporate veil piercing claim.[7] Thus, we decline to apply the doctrine of collateral estoppel to the factual findings made by the English court in the costs judgment.

Although we acknowledge that there is some overlap in the facts relevant to the issues in the present case and those in the English action, "[o]ur Supreme Court has held . . . that an overlap in issues does not necessitate a finding of identity of issues for the purposes of collateral estoppel." *Wiacek Farms, LLC* v. *Shelton*, supra, 132 Conn. App. 172. Our Supreme Court has also "recognized that applying the doctrine of collateral estoppel has harsh consequences, namely, cutting off a party's right to future litigation on a given issue, [and our Supreme Court has] been reluctant to uphold the invocation of the doctrine unless the issues are completely identical." *Corcoran* v. *Dept. of Social Services*, supra, 271 Conn. 695. On the facts of the present case, we decline to foreclose the issue that Vik is Sebastian's alter ego because that issue is not identical to those issues that were before the English court. Moreover, we decline to give preclusive effect to the English court's postjudgment costs award based on the lack of procedural safeguards. Thus, the court properly concluded that genuine issues of material fact exist as to the issues.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The defendants filed the present appeal on October 26, 2015, and on October 28, 2015, the plaintiff filed its appeal.

[2] Under § 51 of the United Kingdom's Senior Courts Act, a nonparty to an action may be summarily held liable for a judgment of attorney's fees and costs made against a party. See Senior Courts Act 1981, c. 54, § 51. The English court explained in the English costs judgment that, in assessing

costs under § 51, the "critical factor" is "the nature and degree of the nonparty's connection with the proceedings." *Deutsche Bank AG* v. *Sebastian Holdings, Inc.*, [2004] EWHC 2073 (Q.B.) The English court emphasized that "[a]n application under [§] 51 does not involve the assertion of a cause of action but is a request for the exercise by the English court of a statutory discretion in relation to proceedings in which the court already has jurisdiction and, as here, has usually already given judgment against a party subject to that jurisdiction." Id.

[3] See General Statutes § 52-604 et seq.

[4] As a threshold matter, we note that "[o]rdinarily, the denial of a motion for summary judgment is not an appealable final judgment. . . . When the decision on a motion for summary judgment, however, is based on the doctrine of collateral estoppel, the denial of that motion does constitute a final judgment for purposes of appeal. . . . That precept applies to the doctrine of res judicata with equal force." (Citations omitted; internal quotation marks omitted.) *Lighthouse Landings, Inc.* v. *Connecticut Light & Power Co.*, 300 Conn. 325, 328 n.3, 15 A.3d 601 (2011).

[5] The English court's decision in granting the nonparty costs application reflects that it found jurisdiction over Vik solely for the purpose of awarding a judgment for costs incurred in the English action. The English court's jurisdiction over Vik was derived from chapter 54, § 51 of the Senior Courts Act 1981, which confers upon the English court "full power to determine by whom and to what extent the costs are to be paid." In granting the costs application, the English court explained that Vik was responsible for legal costs as a nonparty based on, inter alia, his status as the sole shareholder and sole director of Sebastian and because Vik controlled the conduct of the litigation on Sebastian's behalf.

[6] See footnote 2 of this opinion.

[7] Specifically, the English court stated, "if a non-party costs order is made against a company director or shareholder, it is wrong to characterize this as piercing or lifting the corporate veil or to say that the company and the director or shareholder are one in the same. The separate personality of a corporation, even a single member corporation, is deeply imbedded in our law for the purpose of dealing with legal rights and obligations." *Deutsche Bank AG* v. *Sebastian Holdings, Inc.*, [2004] EWHC 2073 (Q.B.).