ANDREAS SAVVIDIS *v.* CITY OF NORWALK
(AC 31586)

Bishop, Beach and Bear, Js.

Argued March 23—officially released June 14, 2011

*Linda M. Guliuzza*, assistant corporation counsel, with whom, on the brief, was *Robert F. Maslan, Jr.*, corporation counsel, for the appellant (defendant).

*Allan M. Cane*, for the appellee (plaintiff).

*Opinion*

BISHOP, J. This appeal by the defendant, the city of Norwalk, stems from the trial court's denial of cross motions for summary judgment filed by the parties in an action for money damages brought by the plaintiff, Andreas Savvidis. The case follows an earlier action between the parties in which the plaintiff sought and obtained an order of mandamus requiring the defendant

to issue a certificate of occupancy regarding certain real property. Because we agree with the defendant that the plaintiff's claims in this action are barred by the doctrine of res judicata, we reverse the judgment of the trial court.

The following procedural and factual history, which is undisputed, is relevant to the resolution of the defendant's appeal. In March, 2005, the plaintiff and the then co-owners of the property commenced an action seeking a writ of mandamus for a certificate of occupancy and damages for financial losses incurred in upgrading an apartment building on the property in Norwalk. On August 8, 2007, following a trial, the court rendered a decision in favor of the plaintiff and the co-owners, granting a writ of mandamus directing the defendant to issue a certificate of occupancy for the subject property. With respect to the plaintiff's claim for money damages, the court stated: "The court finds for the defendant based on the order in the [mandamus claim]." Thus, the court did not award any money damages to the plaintiffs. Although the defendant filed an appeal, the defendant, at a later date, issued a certificate of zoning compliance, a certificate of occupancy, and withdrew its appeal.

In August, 2008, the plaintiff commenced this action seeking monetary damages on the ground that he was unable to rent the subject property from April 27, 2004, until May 30, 2008, and that he incurred attorney's fees and other costs as a result of the defendant's failure to timely issue a certificate of occupancy. The parties subsequently filed cross motions for summary judgment. In his motion, the plaintiff argued that the defendant's liability had been determined in the first action and, therefore, could not be relitigated. In its motion, the defendant claimed that the plaintiff's claims were barred by the doctrine of res judicata on the ground

that the plaintiff sought and was denied monetary damages in the first action, and, although he may not have raised these specific claims for compensation, he had the opportunity to seek them in the first action but failed to do so. In response, the plaintiff alleged that res judicata should not apply because it would have been premature for him to seek compensation for lost business opportunity at that juncture.[1] The court denied both motions for summary judgment on the ground that it was unable to determine whether the claims in the present action had been litigated in the first action.[2] This appeal followed.[3]

On appeal, the defendant claims that the court improperly determined that there was an issue of material fact as to whether the plaintiff's claims were barred by the doctrine of res judicata.[4] We agree.

The standard of review of motions for summary judgment is well settled. "Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material

---

[1] The defendant also claimed that it was entitled to judgment as a matter of law on the basis of municipal immunity. The court rejected that argument as well and the defendant has challenged that ruling on appeal. Because we conclude that the plaintiff's claims are barred by the doctrine of res judicata, we need not address the court's determination of the defendant's immunity defense.

[2] In denying the motion for summary judgment, the court appeared to believe that there were factual issues involved in deciding whether res judicata applied. We disagree as we believe that the issue in this case may be resolved by reference to the pleadings, the interpretation of which is always a question of law for the court. *BNY Western Trust* v. *Roman*, 295 Conn. 194, 210, 990 A.2d 853 (2010).

[3] Although the denial of a motion for summary judgment is ordinarily not a final judgment, the denial of a motion for summary judgment on the basis of res judicata is an appealable final judgment. See *Singhaviroj* v. *Board of Education*, 124 Conn. App. 228, 232, 4 A.3d 851 (2010).

[4] The plaintiff did not appeal from the court's denial of his motion for summary judgment.

fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law. . . . On appeal, we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court." (Internal quotation marks omitted.) *Weiss* v. *Weiss*, 297 Conn. 446, 458, 998 A.2d 766 (2010). Our review of the trial court's decision to deny the defendant's motion for summary judgment is plenary. See id.

"[T]he applicability of res judicata . . . presents a question of law over which we employ plenary review. . . . The principles that govern res judicata are described in Restatement (Second) of Judgments . . . . The basic rule is that of § 18, which [provides] in relevant part: When a valid and final personal judgment is rendered in favor of the plaintiff: (1) [t]he plaintiff cannot thereafter maintain an action on the original claim or any part thereof, although he may be able to maintain an action upon the judgment . . . . As comment (a) to § 18 explains, [w]hen the plaintiff recovers a valid and final personal judgment, his original claim is extinguished and rights upon the judgment are substituted for it. The plaintiff's original claim is said to be merged in the judgment. Our . . . case law has uniformly approved and applied the principle of claim preclusion or merger. . . .

"Because the operative effect of the principle of claim preclusion or merger is to preclude relitigation of the original claim, it is crucial to define the dimensions of

that original claim. The Restatement (Second), Judgments provides, in § 24, that the claim [that is] extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose. What factual grouping constitutes a transaction, and what groupings constitute a series, are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage. In amplification of this definition of original claim, § 25 of the Restatement (Second) [of Judgments provides] that [t]he rule of § 24 applies to extinguish a claim by the plaintiff against the defendant even though the plaintiff is prepared in the second action (1) [t]o present evidence or grounds or theories of the case not presented in the first action, or (2) [t]o seek remedies or forms of relief not demanded in the first action.

"The transactional test of the Restatement [(Second) of Judgments] provides a standard by which to measure the preclusive effect of a prior judgment, which we have held to include any claims relating to the cause of action which were actually made or might have been made. . . . In determining the nature of a cause of action for these purposes, we have long looked to the group of facts which is claimed to have brought about an unlawful injury to the plaintiff . . . and have noted that [e]ven though a single group of facts may give rise to rights for several different kinds of relief, it is still a single cause of action. . . .

"The Restatement (Second) of Judgments further explains, with respect to how far the witnesses or proof

in the second action would tend to overlap the witnesses or proof relevant to the first, [i]f there is a substantial overlap, the second action should ordinarily be held precluded. But the opposite does not hold true; even when there is not a substantial overlap, the second action may be precluded if it stems from the same transaction or series. 1 Restatement (Second), Judgments § 24, comment (b) (1982). Similarly, [w]hen a defendant is accused of successive but nearly simultaneous acts, or acts which though occurring over a period of time were substantially of the same sort and similarly motivated, fairness to the defendant as well as the public convenience may require that they be dealt with in the same action. Id., comment (d).

"Our rules of res judicata are based on the public policy that a party should not be allowed to relitigate a matter which it already has had an opportunity to litigate. . . . [T]he purpose of a law suit is not only to do substantial justice but to bring an end to controversy. . . . [T]he purposes of res judicata [of] promoting judicial economy, minimizing repetitive litigation, preventing inconsistent judgments and providing repose to parties . . . [however, must be] balanced against the competing interest of the plaintiff in the vindication of a just claim. . . . Indeed, we have recognized that the application of res judicata can yield harsh results . . . and, as a result, have stated that the doctrine should be flexible and must give way when [its] mechanical application would frustrate other social policies based on values equally or more important than the convenience afforded by finality in legal controversies." (Citations omitted; internal quotation marks omitted.) *Lighthouse Landings, Inc.* v. *Connecticut Light & Power Co.*, 300 Conn. 325, 347–50, 15 A.3d 601 (2011).

Here, it is undisputed that the plaintiff's claim for lost rental income was not litigated in the first action. The plaintiff claims, and we agree, that a fair reading

of the complaint in the first action reveals that his claim for monetary damages in that action was presented as an alternative to the granting of a writ of mandamus. In short, the plaintiff, in the first action, sought either a writ of mandamus or compensation for the funds he claimed to have expended in reliance on the defendant's obligation to issue a certificate of occupancy for the subject premises. Even though the plaintiff did not seek compensation for lost business opportunities in that action, the defendant contends that the plaintiff's claim is barred by res judicata because the plaintiff had the opportunity to litigate that claim in the first action but failed to do so. Based on our review of the complaints in the two actions, it is clear that the plaintiff's claims in both arise from the same underlying facts, namely, the defendant's failure to timely issue a certificate of occupancy. Indeed, the plaintiff does not claim otherwise.

The plaintiff claims, nevertheless, that although he sought money damages incurred in upgrading the subject property in the first action in reliance on obtaining a certificate of occupancy, he could not have then sought damages for lost rental income because such a claim did not exist until the mandamus had been granted, and the financial losses could not have been fully ascertained until the certificate of occupancy had issued. We are not persuaded. Indeed, the plaintiff's argument that it would have been premature for him to seek compensation for lost business opportunities before obtaining the equitable relief of mandamus is unsupported by our decisional law which states that damages for future anticipated business profits, if buttressed by reasonable evidence, are a proper subject of a compensatory award. See *Cheryl Terry Enterprises* v. *Hartford*, 270 Conn. 619, 639, 854 A.2d 1066 (2004) (damages for future lost profits recoverable to the extent evidence affords sufficient basis for estimating amount with reasonable

certainty). Indeed, it is axiomatic that damages may not be awarded absent a finding of liability and that resulting damages, including future damages, are routinely sought in the same action and not through piecemeal or repetitive litigation. Accordingly, we see no reason why the plaintiff could not have sought damages for anticipated lost business income in the first action. Thus, because the plaintiff's claim for lost rental income arose from the same set of causal circumstances as his claims in the first action and he could have sought damages for such projected losses in that action, he is now precluded by the doctrine of res judicata from asserting such a claim in the present action.

The judgment is reversed and the case is remanded with direction to render judgment in favor of the defendant.

In this opinion the other judges concurred.