******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

LAWRENCE H. BUCK ET AL. *v.* TOWN
OF BERLIN ET AL.
(AC 37209)

DiPentima, C. J., and Beach and Sheldon, Js.

*Submitted on briefs October 9, 2015—officially released February 23, 2016*

(Appeal from Superior Court, judicial district of New
Britain, Swienton, J.)

*Melinda A. Powell* and *Cindy A. Miller* filed a brief
for the appellant (named defendant).

*Michael F. Dowley* and *Melissa S. Harris* filed a brief
for the appellees (named plaintiff et al.).

*Opinion*

BEACH, J. The defendant town of Berlin appeals from the decision of the trial court denying its motion for summary judgment.[1] On appeal, the defendant claims that the court improperly denied its motion for summary judgment because (1) the plaintiffs' claim is barred by res judicata, in that (a) the claim arises from the same cause of action that was litigated in a prior action, and (b) the plaintiffs had an adequate opportunity to litigate the cause of action in that action; and (2) the court erred by concluding that a genuine issue of material fact, requiring the denial of the motion for summary judgment, existed. We agree with the defendant and reverse the judgment of the trial court.

The following facts, as recounted by the trial court, are relevant to our review of the defendant's claim. "On August 31, 2012, the plaintiffs, Lawrence Buck and Christopher Buck, filed the operative seven count complaint against the defendants, [the] town of Berlin, Paul Prior, Sally Prior, Kevin Budney, and Lisa Budney. On January 2, 2013, the plaintiffs withdrew counts two through seven of the complaint and withdrew the action against the defendants Paul Prior, Sally Prior, Kevin Budney, and Lisa Budney. The plaintiffs allege the following relevant facts in the remaining count, count one,[2] against the remaining defendant, the defendant Berlin. . . .

"The plaintiffs accessed their property by utilizing . . . Lamentation Mountain Pass Road[3] and Middle Road, which are known as Quincy Trail Road. The defendant authorized the Lamentation Mountain Estates Subdivision Section XIII, which approved a road being partially built over part of Quincy Trail Road and an easement for the defendant . . . . The defendant later placed gates and concrete blocks at the ends of Quincy Trail Road, eliminating the plaintiffs' sole means of vehicular access to their property. The defendant stated in a memorandum from . . . [the] town manager that 'if someone can prove ownership . . . of [or] the need for access to this land between the fences, we will give them a key.' This statement was reinforced by Mayor Ida Ragazzi at a town council meeting, held on March 18, 1997, when she stated, 'upon proof of ownership to property on Lamentation Mountain, the owners will be given a key to the fences.' . . .

"The plaintiffs were also two of the plaintiffs involved in prior litigation, titled *Tighe* v. *Berlin*, [Superior Court, judicial district of Hartford, Docket No. CV-97-0575028-S (August 9, 2000), aff'd, 259 Conn. 83, 788 A.2d 40 (2002)] which was initiated on October 28, 1997. The four count complaint was brought by numerous individuals who owned land affected by the project, but the plaintiffs were only part of [the] third and fourth counts. Put simply, the plaintiffs alleged in the third count of

that complaint that the subdivision approval granted by the defendant [to the buyers] resulted in the installation of a locked gate and cement blocks on the road the plaintiffs use to access their properties, denying the plaintiffs access to their properties. Similarly, the plaintiffs alleged in the fourth count of that complaint that the defendant . . . had not formally abandoned the road and that the placement of the fences and cement blocks denied the plaintiffs access to their properties. . . .

"On May 19, 2014, the defendant filed a motion for summary judgment on the ground that 'there are no genuine issues of material fact for a jury to decide because [the] plaintiffs' inverse condemnation claim is barred by res judicata, because the instant claims were raised or could have been raised in previous litigation between these parties.' . . . In response, on June 19, 2014, pursuant to Practice Book § 17-45, the plaintiffs filed a memorandum of law in opposition . . . . The defendant subsequently filed a reply on July 9, 2014 . . . . The matter was heard at the short calendar on July 14, 2014." (Footnotes altered.)

The court denied the defendant's motion for summary judgment because "there remain[ed] a genuine issue of material fact as to whether the claim is barred by res judicata." The court implicitly held that the prior action had been brought pursuant to General Statutes § 13a-49 and, thus, a subsequent claim for money damages was not necessarily barred. The defendant disagreed, and this appeal followed.

We begin by setting forth our standard of review. "Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law. . . . On appeal, we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court. . . . Our review of the trial court's decision to deny the defendant's motion for summary judgment is plenary. (Citation omitted; internal quotation marks omitted.) *Savvidis* v. *Norwalk*, 129 Conn. App. 406, 409–10, 21 A.3d 842, cert. denied, 302 Conn. 913, 27 A.3d 372 (2011).

"[T]he applicability of res judicata . . . presents a question of law over which we employ plenary review. . . . The principles that govern res judicata are

described in Restatement (Second) of Judgments . . . . The basic rule is that of § 18, which [provides] in relevant part: When a valid and final personal judgment is rendered in favor of the plaintiff . . . [t]he plaintiff cannot thereafter maintain an action on the original claim or any part thereof, although he may be able to maintain an action upon the judgment. . . . As comment (a) to § 18 explains, [w]hen the plaintiff recovers a valid and final personal judgment, his original claim is extinguished and rights upon the judgment are substituted for it. The plaintiff's original claim is said to be merged in the judgment. Our . . . case law has uniformly approved and applied the principle of claim preclusion or merger." (Internal quotation marks omitted.) Id., 410.

We consider the policies underlying res judicata in our determination of whether to apply the doctrine in a particular case. "These [underlying] purposes are generally identified as being (1) to promote judicial economy by minimizing repetitive litigation; (2) to prevent inconsistent judgments which undermine the integrity of the judicial system; and (3) to provide repose by preventing a person from being harassed by vexatious litigation." (Internal quotation marks omitted.) *Isaac* v. *Truck Service, Inc.*, 253 Conn. 416, 422, 752 A.2d 509 (2000). "[W]e have recognized that the application of res judicata can yield harsh results . . . and, as a result, have stated that the doctrine should be flexible and must give way when [its] mechanical application would frustrate other social policies based on values equally or more important than the convenience afforded by finality in legal controversies." (Internal quotation marks omitted.) *Savvidis* v. *Norwalk*, supra, 129 Conn. App. 412.

The court concluded that there was a genuine issue of fact as to whether the case was barred by res judicata because the plaintiffs never were provided a key with which to unlock the gate and access their land. The defendant contends that the court "mistakenly found a factual dispute where there is none." Accordingly, we shall address the defendant's two res judicata arguments before turning to the defendant's claim that the court should not have found the existence of a genuine issue of material fact.

I

The defendant claims that the present action is barred by res judicata because the claim arises from the same transaction that was litigated in the 1997 action, and because the plaintiffs had an adequate opportunity to litigate this claim in the 1997 action. We agree.

A

We first examine the claim presented in the 1997 action because "the scope of matters precluded [in the present action] necessarily depends on what has

occurred in the former adjudication." (Internal quotation marks omitted.) *Joe's Pizza, Inc.* v. *Aetna Life & Casualty Co.*, 236 Conn. 863, 873, 675 A.2d 441 (1996). We then compare the complaint in the present action with the pleadings and judgment in the 1997 action. See id.

"[T]he interpretation of pleadings is always a question of law for the court . . . ." (Internal quotation marks omitted.) *Russo Roofing, Inc.* v. *Rottman*, 86 Conn. App. 767, 772, 863 A.2d 713 (2005). Therefore, our review of the court's interpretation of the pleadings is plenary. See id.

The third and fourth counts of the complaint in the 1997 action are at issue because the town of Berlin was a defendant and the Bucks were plaintiffs in those counts. The third count of the complaint in the 1997 action, in relevant part, stated: "For many years a roadway system known as Lamentation Mountain Pass Road . . . provided access to property on Lamentation Mountain . . . . During the past several years, [the defendant] has granted subdivision approval . . . to construct single-family homes in an area known as Lamentation Mountain Estates, which is located on the southerly side of Spruce Brook Road where Lamentation Mountain Pass Road and Spruce Brook Road intersect. . . . As a result of the aforesaid development, Lamentation Mountain Pass Road no longer intersects with Spruce Brook Road, but rather, it now intersects with Quincy Trail, a public highway in [the defendant town] created as a result of the aforesaid development. . . .

"[The defendant] has recently installed a locked gate and cement blocks to prevent any vehicular access to Lamentation Mountain Pass Road from the [defendant town's] public highway system. . . . The plaintiffs own various parcels of land on Lamentation Mountain to which access is provided by Lamentation Mountain Pass Road. Action taken by [the defendant] in blocking said roadway has denied [the] plaintiffs access to their land. . . . For many years, the plaintiffs, and/or their predecessors in title, have used the Lamentation Mountain Pass Road system to access their lands and, as such, [the] plaintiffs have a prescriptive right to use said roadway to access their lands, including vehicular access."

The fourth count of the complaint, in relevant part, further claimed: "[The defendant] has not formally abandoned Lamentation Mountain Pass Road as a public highway, and the plaintiffs, together with the general public, have a right to use said road for all purposes for which a highway may be used in [Connecticut], including vehicular use."

In their prayer for relief in the 1997 complaint, the plaintiffs requested that the court order the defendant

to remove the locked gate from the road and that the court issue an injunction against the defendant's interference with the plaintiffs' right to use the road. The plaintiffs also claimed attorney's fees and costs from the defendant.

The only relevant portion of the plaintiffs' complaint in the present action is the first count, which states: "Since January 8, 1982, [the] plaintiffs have accessed the lower portion of [their lot] through [the defendant town] via [Lamentation Pass Mountain Road] . . . an unimproved road beginning at the Quincy Trail turnaround in [the defendant town] and continuing into and through [Middletown] . . . . For many years prior to January 8, 1982, [p]laintiffs' predecessors in title and predecessors in title of surrounding properties accessed their properties by utilizing [Lamentation Mountain Pass Road] as a means of access to [their lot] and surrounding properties. . . .

"[Lamentation Mountain Pass Road] provide[s] the plaintiffs with their only access to the entire [lot]. . . . At [the defendant's] executive board meeting on January 24, 1995, discussing the acceptance of two areas of open space in the Lamentation Estates Subdivision . . . the minutes indicate that [the] plaintiff L. Buck and a Mr. James Tighe brought to the [defendant's] attention their right to use [Lamentation Mountain Pass Road] as access to their properties. . . .

"Despite being made aware of [the] plaintiffs' predecessors' use, [the] plaintiffs' use and [the] plaintiffs' right to use [Lamentation Mountain Pass Road], [the defendant] approved the . . . subdivision . . . . [O]n or about October, 1995 . . . [the defendant] placed some concrete blocks at the south end of Quincy Trail in an unsuccessful attempt to prevent [the] plaintiffs' vehicular access to [the road]. . . . [In a memorandum] dated March 17, 1997, [the defendant] then decided to replace the concrete blocks with fences . . . .

"On or about June 9, 1997, being made aware of [the] plaintiffs' continued use of the road, [the defendant] placed a large concrete block at each side of the gate at the south end of Quincy Trail, thereby completely blocking all vehicle access to and from [the plaintiff's lot] via [Lamentation Mountain Pass Road]. . . . [The defendant] then also placed a gate approximately six hundred (600) feet past the gate . . . thereby blocking further vehicular access in either direction. . . . [The defendant] then also placed cement blockades at the town boundary of [Lamentation Mountain Pass Road], preventing further vehicular access via [the road] into [Middletown] and into and onto [the plaintiffs' lot]. . . .

"[The defendant] has refused to provide [the] plaintiffs with a key or with access to [their lot]. . . . Such road closure and subsequent deprivation amounts to

inverse condemnation . . . ." (Citation omitted.)

In their prayer for relief, the plaintiffs requested compensation for the alleged taking, a permanent injunction, exemplary or punitive damages, prejudgment interest, litigation fees and costs, consequential losses, and enforcement of the promise.

The complaint in the 1997 action and the complaint in the present action are premised on the same underlying transaction. The Restatement (Second) of Judgments guides our analysis of the two complaints. "Because the operative effect of the principle of claim preclusion or merger is to preclude relitigation of the original claim, it is crucial to define the dimensions of that original claim. The Restatement . . . provides, in § 24, that the claim [that is] extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose. What factual grouping constitutes a transaction, and what groupings constitute a series, are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage. . . .

"The transactional test of the Restatement [(Second) of Judgments] provides a standard by which to measure the preclusive effect of a prior judgment, which we have held to include any claims relating to the cause of action which were actually made or might have been made. . . . In determining the nature of a cause of action for these purposes, we have long looked to the group of facts which is claimed to have brought about an unlawful injury to the plaintiff . . . and have noted that [e]ven though a single group of facts may give rise to rights for several different kinds of relief, it is still a single cause of action. . . .

"The Restatement (Second) of Judgments further explains, with respect to how far the witnesses or proof in the second action would tend to overlap the witnesses or proof relevant to the first, [i]f there is a substantial overlap, the second action should ordinarily be held precluded. But the opposite does not hold true; even when there is not a substantial overlap, the second action may be precluded if it stems from the same transaction or series. 1 Restatement (Second), Judgments § 24, comment (b) (1982). Similarly, [w]hen a defendant is accused of successive but nearly simultaneous acts, or acts which though occurring over a period of time were substantially of the same sort and similarly motivated, fairness to the defendant as well as the public convenience may require that they be dealt with in the same action. Id., comment (d)." (Internal quotation marks omitted.) *Savvidis* v. *Norwalk*, supra,

Application of the transactional test leads us to the conclusion that the plaintiff's claim in the present action is the same, for preclusion purposes, as their claim in the 1997 action. In the 1997 complaint, the plaintiffs alleged that, due to the defendant's interference in the form of a locked gate and cement blocks, they could not access their property by way of Lamentation Mountain Pass Road. The plaintiffs further alleged that the defendant had not formally abandoned Lamentation Mountain Pass Road, and that, as a result, the plaintiffs had a right to continue to use the road. In the present complaint, the plaintiffs essentially claim, albeit in more detail, the same transaction as in the 1997 action—that the defendant's interference in the form of a locked gate and large concrete blocks prevented the plaintiffs from accessing their property by means of Lamentation Mountain Pass Road, which constituted a taking.

The factual bases underlying these distinct legal theories not only are " 'related in time, space, origin, or motivation' "; id., 411; they are virtually indistinguishable; indeed, the complaint in the present action does not allege any relevant wrongdoing by the defendant since June 9, 1997, months before they served their complaint in the 1997 action, on October 28, 1997. In both the 1997 action and the present action, the defendant is alleged to have committed not only "successive but nearly simultaneous acts, or acts which though occurring over a period of time were substantially of the same sort and similarly motivated"; (internal quotation marks omitted) id., 412; the defendant is alleged to have committed the very same act—blocking the plaintiffs' access to their property—in the present action as in the 1997 action.

The plaintiffs argue that the present action is not based upon the same transaction as that asserted in the 1997 action, because in the 1997 action, they had claimed a prescriptive right over Lamentation Mountain Pass Road (count three), and they had claimed that Lamentation Mountain Pass Road had not been abandoned as a public highway (count four). The plaintiffs assert that their claim in the present action, on the other hand, is based on the defendant's discontinuance or abandonment of Lamentation Mountain Pass Road through the use of barriers, which they believe entitles them to compensation. Although the legal theories of recovery may differ somewhat in the two complaints, both could have been advanced in the first; *Athena Holdings, LLC* v. *Marcus*, 160 Conn. App. 470, 477, 125 A.3d 290 ("it is permissible under our rules of practice to advance alternative and even inconsistent theories of liability in a single complaint"), cert. denied, 320 Conn. 908,        A.3d        (2015); and the Restatement itself. 1 Restatement (Second), supra, § 25 (res judicata may "extinguish a claim by the plaintiff against the

defendant even though the plaintiff is prepared in the second action . . . [t]o seek remedies or forms of relief not demanded in the first action").

We are not persuaded by the plaintiffs' argument that their claim in the present action is distinct from the claims in the 1997 action because they differ in legal theories espoused and relief sought, and therefore are not subject to preclusion. We conclude that the 1997 and present actions are based upon the same underlying transaction for the purpose of preclusion.

B

Next, we determine whether the plaintiffs had an opportunity to litigate their present claim in the 1997 action. "In considering a defense of res judicata, our Supreme Court has stated that [t]he appropriate inquiry . . . is whether the party had an adequate opportunity to litigate the matter in the earlier proceeding . . . ." (Emphasis omitted; internal quotation marks omitted.) *Cayer Enterprises, Inc.* v. *DiMasi*, 84 Conn. App. 190, 194, 852 A.2d 758 (2004). The court concluded that the prior action was premised upon § 13a-49, which provides in effect for an appeal from a town's decision to abandon a road and does not provide for the award of damages in the same action. The defendant maintains that the prior action simply was not brought pursuant to § 13a-49. We agree with the defendant.

Section 13a-49 provides a procedure by which a town's selectmen may abandon roads. Anyone aggrieved by the town's decision may appeal to the Superior Court pursuant to General Statutes § 13a-62. Because the Superior Court action is analogous to an administrative appeal, money damages may not be awarded in the Superior Court action. See *Cone* v. *Waterford*, 158 Conn. 276, 279, 259 A.2d 615 (1969).

Whether the 1997 action properly can be characterized as being brought pursuant to § 13a-49 guides our resolution of the question whether the plaintiffs had an opportunity to litigate their claim in the prior adjudication. In *Cone*, our Supreme Court concluded that the plaintiffs, who had instituted a prior action to appeal the discontinuance of a road, properly instituted a later, separate action for damages arising from the same discontinuance. Id., 277–78. The defendant in *Cone* argued that the second claim was barred by res judicata. The court disagreed, and held that it was proper to bring a later, separate civil action for money damages after bringing a § 13a-49 action. "In the first place . . . the statute . . . § 13a-49, authorizing a discontinuance (unlike [General Statutes] §§ 13a-52, 13a-54, and 13a-63, for example) makes no provision for the assessment of damages. Furthermore, the right to damages for a discontinuance . . . applies only where, as here, there is practically a total and permanent destruction of the abutter's right of access to any public highway . . . ."

(Citations omitted) Id., 280.

On the basis of its reading of *Cone*, the court in the present matter concluded that the plaintiffs "would not have been able to seek money damages in the prior action." In support of this conclusion, the court referred to *Jurczak* v. *Durham*, Superior Court, judicial district of Middlesex, Docket No. 67480 (April 2, 1993) (1993 WL 119660, *3), which held that, pursuant to *Cone*, "an aggrieved landowner may be able to recover damages in a separate civil action, apart from the application under General Statutes § 13a-49, if there is practically a total and permanent destruction of the abutter's right of access to any public highway . . . ." (Internal quotation marks omitted.) Relying on *Cone* and *Jurczak*, the court ultimately determined that the plaintiffs were precluded from bringing an inverse condemnation claim in the 1997 action; thus the claim was not barred by res judicata.

The defendant claims that the court improperly characterized the plaintiffs' complaint in the 1997 action as one brought pursuant to § 13a-49, hence, *Cone* did not preclude the plaintiffs from litigating their inverse condemnation claims in the 1997 action. Section 13a-49 (a) provides the mechanism for a town's abandonment or discontinuance of a road, and it also provides, in pertinent part, the remedy of appeal: "(4) (A) . . . any person aggrieved by a discontinuance or partial discontinuance [of a highway or private way] under this subsection may . . . apply to the superior court for the judicial district in which such town is located, in the manner prescribed in section 13a-62."[4] Section 13a-62 provides the following procedure, in pertinent part, for seeking relief pursuant to § 13a-49: "Any person aggrieved by the doings of the selectmen in laying out a highway[5] may . . . apply to the superior court . . . for relief, causing such selectmen to be cited to show cause why such relief should not be granted. Such application shall be heard and determined by a committee of three disinterested persons to be appointed by the court. If such committee finds that such highway is not of common convenience and necessity, said court shall set aside such layout . . . but, if such committee finds that such highway is of common convenience and necessity, the application shall be dismissed . . . . The report of such committee may be set aside by the court for any irregularity or improper conduct on its part. . . ." (Footnote added.) General Statutes § 13a-62.[6]

Our review of the record does not support the court's conclusion or the plaintiffs' contention on appeal that the 1997 action was brought pursuant to § 13a-49 and § 13a-62. Section 13a-49 governs the discontinuance of a highway or private way.[7] The complaint did not allege that Lamentation Mountain Pass Road was discontinued or abandoned—neither of the two counts involv-

ing the plaintiffs alleged that Lamentation Mountain Pass Road was discontinued. Indeed, the fourth count claimed the opposite: "[The defendant] has *not formally abandoned* Lamentation Mountain Pass Road as a public highway . . . ." (Emphasis added.) As such, the complaint, on its face, does not support the argument that the plaintiffs had brought the action as a § 13a-49 claim.

Additionally, the plaintiffs did not sufficiently plead any facts that indicated that the action was a § 13a-49 claim. The complaint and the record as a whole do not support the proposition that the plaintiffs in any way adhered to the procedural requirements for bringing a § 13a-49 action as prescribed in § 13a-62. For instance, there is no allegation that the plaintiffs presented an application to a committee of three people appointed by the court. See General Statutes § 13a-62. Without any indication that this requirement or any of the other steps outlined in § 13a-62 were followed, coupled with a complaint that alleged that Lamentation Mountain Pass Road had not been abandoned or formally discontinued, but rather that the town had wrongfully blocked the road and prevented the plaintiffs from using their easement, we conclude that the plaintiffs simply did not bring the 1997 action pursuant to § 13a-49, the statute governing discontinued highways.

We return to *Cone* v. *Waterford*, supra, 158 Conn. 276. In their brief, the plaintiffs argue that, pursuant to *Cone*, "the first step for someone aggrieved by the discontinuance of a road is to bring a lawsuit against the town regarding the legality of the discontinuance. It is not until there is a judgment in favor of the town that a determination as to the permanent destruction of the right of access can be made . . . ." Were we to adopt the plaintiff's interpretation—that *Cone* allows plaintiffs to pursue money damages in a separate civil action only after losing a case presented to a committee, brought according to § 13a-62—we still would decline to hold that the application of *Cone* to the present matter avoids preclusion because the record does not show that the plaintiffs followed the procedure outlined in § 13a-62 in the prior case.[8] *Cone*'s holding is based upon the rationale that it is inappropriate to bring a claim for monetary damages in the same Superior Court proceeding as an administrative type appeal from a decision made by the committee appointed pursuant to § 13a-62, which does not provide for damages. Because the plaintiffs here did not appeal from such a decision in the 1997 action, the rationale of *Cone* does not apply.

The plaintiffs point to *Jurczak* v. *Durham*, supra, 1993 WL 119660,[9] in support of their position. Like *Cone*, *Jurczak* is not to the point, however, because, in contrast to the plaintiffs in the present matter, the plaintiffs in *Jurczak* clearly brought their initial claim pursuant to

§§ 13a-49 and 13a-62: "[T]he plaintiffs filed the present three count application seeking review of the defendants' decision to discontinue the public road with the superior court, pursuant to General Statutes § 13a-49." Id., *1. Thus, the court's conclusion that the plaintiffs in that case could bring a separate civil action for money damages has no authoritative value for the resolution of this case on our present set of facts.

The plaintiffs, then, were not precluded by *Cone* v. *Waterford*, supra, 158 Conn. 276, from bringing their inverse condemnation claim in the 1997 action. Res judicata, according to our Supreme Court, extinguishes a plaintiff's claim against a defendant even when the plaintiff "is prepared in the second action . . . [t]o present . . . theories of the case not presented in the first action . . . ." (Internal quotation marks omitted.) *Weiss* v. *Weiss*, 297 Conn. 446, 461, 998 A.2d 766 (2010). The plaintiffs had the opportunity to litigate the inverse condemnation claim in the 1997 action. Res judicata bars the claim in the present action because the same underlying transaction is at issue in both the 1997 and present actions, and because the plaintiffs had adequate opportunity to litigate the cause of action alleged in the present case in the 1997 action.

## II

The defendant also claims that the court erred in concluding that a genuine issue of material fact existed. In its decision, the court noted that the plaintiffs claimed that they had never received a key to unlock the gate that would have enabled them to access their land, despite the defendant's promise to provide a key to anyone who could prove ownership of property blocked by the gate. The court concluded that, "[w]hile the prior action involved the same parties and there was a judgment entered on the merits, this evidence that the plaintiffs have not been granted access to their property shows that there remains a genuine issue of material fact as to whether the plaintiffs were given the opportunity to fully litigate their claim." The issue of whether the plaintiffs had the opportunity to litigate their claim fully, however, is one of law, and not of fact. Moreover, the plaintiffs have not alleged, in their brief on appeal to this court or in their objection to the motion for summary judgment, that the provision of a key—or any other fact—is both material and in dispute.

Although the defendant, as the party moving for summary judgment, had "the burden of showing . . . that [it] is . . . entitled to judgment as a matter of law"; (internal quotation marks omitted) *Powell* v. *Infinity Ins. Co.*, 282 Conn. 594, 600, 922 A.2d 1073 (2007); the plaintiffs, as the parties opposing summary judgment, "must substantiate [their] adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue." (Internal quotation marks omitted.) *Buell Indus-*

*tries, Inc.* v. *Greater New York Mutual Ins. Co.*, 259 Conn. 527, 550, 791 A.2d 489 (2002). Accordingly, the defendant is entitled to summary judgment based on its res judicata claim, and because the plaintiffs did not show that there was a genuine issue of *material fact* with respect to that claim.

The judgment is reversed and the case is remanded with direction to grant the defendant's motion for summary judgment as to count one of the plaintiffs' second amended complaint.

In this opinion the other judges concurred.

[1] "While a denial of summary judgment generally is not considered a final judgment for purposes of appellate review, the denial of a motion for summary judgment based on the doctrine of res judicata is a final judgment for purposes of an appeal." *Himmelstein* v. *Bernard*, 139 Conn. App. 446, 448 n.2, 57 A.3d 384 (2012).

[2] In count one, the plaintiffs alleged that the defendant's actions amounted to inverse condemnation—a taking of the plaintiffs' property.

[3] The trial court referred to this road as Old Lamentation Mountain Pass Road, but the parties refer to it as Lamentation Mountain Pass Road in their briefs. Hereafter, for ease of reference, we shall refer to the road as Lamentation Mountain Pass Road.

[4] Although § 13a-49 has been amended since the events that gave rise to this appeal, those amendments have no bearing on this appeal. We therefore refer to the current revision of the statute, as amended by No. 15-147, § 1, of the 2015 Public Acts.

[5] In this case, § 13a-62 would apply to the alleged abandonment or discontinuance of a road, as § 13a-49 so provides.

[6] We note that although § 13a-62 has been amended by No. 15-147, § 2, of the 2015 Public Acts, that amendment has no bearing on the merits of this appeal.

[7] In counts three and four of the complaint in the 1997 action, the plaintiffs did not specifically identify § 13a-49 or any other statute, although, notably, in one count of the complaint, which did not involve the plaintiffs, specific statutes were identified.

[8] The plaintiffs and the defendant argue that *Luf* v. *Southbury*, 188 Conn. 336, 449 A.2d 1001 (1982), supports each of their respective positions. *Luf* is not controlling in the present matter, however, because that case did not apply principles of res judicata. The defendant argues that *Luf* overrules *Cone* v. *Waterford*, supra, 158 Conn. 276, and that this court should, therefore, refuse to apply *Cone*. We express no opinion as to whether *Luf* overrules *Cone*; as set forth in this opinion, we determine that *Cone* is inapplicable in any event.

[9] *Jurczak*, of course, does not bind us in any event.