******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ELMA DUNN *v.* DAVID P. ETZEL ET AL.
(AC 37492)

Beach, Alvord and Norcott, Js.

*Argued January 12—officially released June 21, 2016*

(Appeal from Superior Court, judicial district of New Haven, Vitale, J.)

*Thomas E. Minogue*, for the appellant (plaintiff).

*Sandra D. Grannum*, pro hac vice, with whom was *Scott M. Harrington*, for the appellee (named defendant).

*Opinion*

BEACH, J. The plaintiff, Elma Dunn, appeals from the judgment of the trial court rendered following the granting of a motion for summary judgment as to the first count of her complaint in favor of the defendant David Etzel.[1] On appeal, the plaintiff claims that summary judgment was improperly granted because the court incorrectly concluded that a release agreement between the plaintiff and her former employer barred the claim against the defendant.[2] We affirm the judgment of the trial court.

In its memorandum of decision, the court recounted the underlying facts. "On February 25, 2014, the plaintiff . . . commenced this action against the defendant . . . . In the two count complaint, the plaintiff [alleged] the following facts. The plaintiff and the defendant are licensed stock brokers and financial advisors [who] engaged in a sexual relationship with each other while working as partners, sharing revenues equally. Shortly before the plaintiff and the defendant were hired in June of 2002, as a broker team for Janney Montgomery Scott, LLC (Janney), the plaintiff terminated their relationship. Janney provided the plaintiff and the defendant with joint financial advisor numbers so that they could maintain their previous relationship as partners and share revenue on a fifty-fifty basis. The defendant solicited client accounts and the plaintiff formulated client investment plans, prepared and reviewed plans, and provided bond offerings to the clients.

"While at Janney, the defendant (1) refused to pay the plaintiff 50 percent of all the revenue generated each year by their partnership, (2) unilaterally reduced the plaintiff's share of the joint partnership revenues by transferring clients from their partnership account to a separate individual account in his name, and (3) continued to make unwanted sexual advances towards the plaintiff. As a result, in count one, the plaintiff alleges the defendant breached his fiduciary duty as a partner."[3]

The defendant filed a motion for summary judgment. He argued that he was entitled to judgment as a matter of law because the claim against him was barred by a "Settlement Agreement and General Release" (release) signed by the plaintiff and a representative of Janney.

The motion was heard, and the court issued a written memorandum of decision granting the defendant's motion for summary judgment. The court found that there was no genuine issue of material fact as to whether the release barred the plaintiff's claim against the defendant and found that it did bar the claim. The plaintiff filed a motion for reargument and reconsideration, which the court denied.[4] This appeal followed. Additional facts will be set forth as necessary.

The plaintiff claims that the court erred in granting

the defendant's motion for summary judgment. She advances three principal arguments in support of her claim. She argues that the release did not bar her claim asserting breach of fiduciary duty because (1) Janney had no control over the parties' partnership, (2) the defendant was not a party to the release, and (3) the plaintiff did not intend to release any claims against the defendant when she agreed to the terms of the release. We disagree.

Our review of a court's decision to grant a motion for summary judgment is plenary. "Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law." (Internal quotation marks omitted.) *Savvidis* v. *Norwalk*, 129 Conn. App. 406, 409–10, 21 A.3d 842, cert. denied, 302 Conn. 913, 27 A.3d 372 (2011). "Once the moving party has met its burden . . . the opposing party must present evidence that demonstrates the existence of some disputed factual issue. . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact . . . ." (Internal quotation marks omitted.) *Bonington* v. *Westport*, 297 Conn. 297, 305, 999 A.2d 700 (2010).

"On appeal, we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court." (Internal quotation marks omitted.) *Savvidis* v. *Norwalk*, supra, 129 Conn. App. 410. Our review of the trial court's decision to grant the defendant's motion for summary judgment is plenary. See id.

The following principles guide our review of whether the release effectively barred the plaintiff's claim against the defendant.[5] "A release agreement is a contract. It is well settled that a release, being a contract whereby a party abandons a claim to a person against whom that claim exists, is subject to rules governing the construction of contracts." *Giano* v. *Salvatore*, 136 Conn. App. 834, 841, 46 A.3d 996, cert. denied, 307 Conn. 926, 55 A.3d 567 (2012). "A trial court has the inherent power to enforce summarily a settlement agreement as a matter of law when the terms of the agreement are clear and unambiguous." *Audubon Parking Associates Ltd. Partnership* v. *Barclay & Stubbs, Inc.*, 225 Conn. 804, 811, 626 A.2d 729 (1993).

"Although ordinarily the question of contract interpretation, being a question of the parties' intent is a question of fact . . . [w]here there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law. . . . The court's determination as to whether a contract is ambiguous is a question of law; our standard of review, therefore, is de novo. . . .

"A contract is unambiguous when its language is clear and conveys a definite and precise intent. . . . The court will not torture words to impart ambiguity where ordinary meaning leaves no room for ambiguity. . . . Moreover, the mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous. . . . In contrast, a contract is ambiguous if the intent of the parties is not clear and certain from the language of the contract itself. . . . [A]ny ambiguity in a contract must emanate from the language used by the parties. . . . The contract must be viewed in its entirety, with each provision read in light of the other provisions . . . and every provision must be given effect if it is possible to do so. . . . If the language of the contract is susceptible to more than one reasonable interpretation, the contract is ambiguous." (Citation omitted; internal quotation marks omitted.) *Electric Cable Compounds*, *Inc.* v. *Seymour*, 95 Conn. App. 523, 529, 897 A.2d 146 (2006).

First, the plaintiff argues that Janney had no control over the parties' partnership, and, thus, a dispute within that partnership was separate and distinct from her employment with Janney. The release contained a provision that read in relevant part: "The parties hereby mutually release each other, their past, present, and future agents . . . [and] employees . . . from any and all legal, equitable or other claims, counterclaims, [and] demands . . . which *arise out of* . . . the employment and/or termination of employment of [the plaintiff] with Janney, including, but not limited to, any and all claims or counterclaims for . . . breach of fiduciary duty . . . ." (Emphasis added.)

In determining that the plaintiff's claim against the defendant was barred by the release, the court relied on this language as well as the affidavits of the defendant and James English III, the vice president and branch manager at Janney's New Haven office. The plaintiff does not dispute the facts as presented in the affidavits. According to these affidavits, the defendant was an employee of Janney at the time the plaintiff initiated this action.

The court then examined whether the claim as to the defendant "[arose] out of" the plaintiff's "employment and/or termination." In doing so, the court quoted from English's affidavit in which he averred that the plaintiff

and the defendant "were [financial advisors] and colleagues who worked as a team during their entire tenure at Janney. The [team] always had [the defendant] and [the plaintiff] as [financial advisors] who shared team revenues or commissions through joint [financial advisor] numbers. As [the plaintiff] and [the defendant] were registered brokers whose licenses were maintained by Janney, their compensation was paid through Janney. Janney fully disclosed to [the plaintiff] and [the defendant] the commissions payment received by the [p]artners. . . . In May 2011, [the plaintiff] raised the issue that her portion of the [team's] split commissions, then approximately 40%, should be increased. As a result, Janney undertook to facilitate an agreement between the teammates on this issue. However, before any change was made, [the plaintiff] resigned . . . ." The court found that the affidavits established that the revenues at issue in the plaintiff's complaint were so connected to her employment with Janney that the claim directly arose out of the plaintiff's employment with Janney. The court concluded, then, that the release shielded the defendant from liability. The plaintiff now asserts that Janney "had no control over [the defendant] or [the plaintiff] as partners in their partnership entity that existed separate and apart from Janney," and, therefore, her claim against the defendant did not "arise out of" her employment with Janney. The defendant, however, contends that the release is unambiguous, "[t]he contract expressly and unambiguously discharges from liability Janney and its employees," and the plaintiff's "[redefinition] of 'arise out of' " is a "fallacy of an argument."

The language of the release is clear and unambiguous. The parties do not dispute that the defendant was an employee of Janney at the time the plaintiff brought the action against the defendant. The record does not support the plaintiff's argument that her claim against the defendant does not "arise out of her" employment with Janney because her partnership with the defendant is separate from and unrelated to her employment with Janney. Although the partnership preexisted the parties' employment with Janney, the parties' licenses were held by Janney, the parties performed services for Janney in exchange for the compensation that is now at issue, and, as shown by Janney's efforts to facilitate a resolution between the parties, Janney was intrinsically connected to the partnership. The commissions at issue as well as the alleged breach of fiduciary duty directly originated from the plaintiff's employment with Janney, even if Janney itself did not create the cause of action.

The plaintiff further argues that "[i]f this issue was one involving [the plaintiff's] employment with Janney, then Janney, as the employer of [the defendant and the plaintiff] could have simply dictated a resolution of their partnership dispute. Janney was unable to dictate any resolution because it had no control over [the defen-

dant and the plaintiff] as partners in their partnership entity that existed separate and apart from Janney." This argument fails for two reasons. First, the plaintiff agreed to relinquish her right to pursue claims arising out of her employment with Janney, not only those claims pertaining to issues over which Janney had direct control, as the plaintiff suggests in her brief. Second, there is nothing in the record to suggest that Janney was powerless to resolve the dispute between the plaintiff and the defendant; English avers in his affidavit only that the plaintiff quit before Janney could facilitate a resolution of the dispute. Janney's efforts to address the problem—whether or not evidence of "control"— are consistent with the defendant's argument that the dispute arose out of the plaintiff's employment: if two persons are employees, employment related disputes ordinarily arise out of said employment. See *B & D Associates, Inc.* v. *Russell* 73 Conn. App. 66, 71, 807 A.2d 1001 (2002) ("[i]n determining whether a contract is ambiguous, the words of the contract must be given their natural and *ordinary* meaning" [emphasis added; internal quotation marks omitted]).[6]

The plaintiff, moreover, refers to Connecticut and federal case law to define the phrase "arising out of." As we stated in footnote 5 of this opinion, we apply Pennsylvania law in our interpretation of this contract. There are no Pennsylvania cases cited by the parties, and we have found none, that support the proposition that "arising out of" necessarily requires Janney to have had an element of control over the claim in any event. Based upon the plain language of the release, the plaintiff's claim of breach of fiduciary duty falls squarely into the class of claims that the plaintiff agreed to release—"any and all" legal and equitable claims against Janney's employees or agents, including breaches of fiduciary duty, arising out of employment. Janney's payments to the plaintiff and the defendant necessarily are within their employment with Janney. Accordingly, there is no ambiguity, but rather a clear agreement between the plaintiff and Janney to release the plaintiff's claims against Janney and its employees, including the defendant.

Second, the plaintiff contends that the defendant was not a party to the release and, thus, could not later use the agreement to bar liability for his alleged breach of fiduciary duty. In her brief, she stated that "[the defendant] did not expressly affirm or assent to any of the [a]greement's provisions, and he did not provide any consideration to obtain the [r]elease by which he seeks to bar [the plaintiff's] claims." She noted that (1) the defendant's name was not mentioned in the release, (2) the plaintiff and the defendant did not have a meeting of the minds as to the provisions in the release, and (3) the partnership between the plaintiff, and the defendant is not mentioned in the release. Therefore, she argues, the defendant lacked the ability to invoke

the release.

Pennsylvania courts recognize the ability of contracts to benefit third parties. See *Hasselrode* v. *Gnagey*, 404 Pa. 549, 550–52, 172 A.2d 764 (1961) (interpreting release extended to "any and all persons" to exempt individual not named in release and who paid no consideration for release); *In re Bodnar's Estate*, 472 Pa. 383, 388, 372 A.2d 746 (1977) ("[t]here is no requirement that a release specifically name all of the parties to be released if the terms of the release clearly extend to them"); *Buttermore* v. *Aliquippa Hospital*, 522 Pa. 325, 329–30, 561 A.2d 733 (1989) (holding that plaintiff could not bring action against defendants because they were included in settlement for which plaintiff received consideration even though defendants themselves had provided no consideration to receive such benefit). In *Taylor* v. *Solberg*, 566 Pa. 150, 159–60, 778 A.2d 664 (2001), a medical malpractice case cited by the trial court, the Supreme Court of Pennsylvania concluded that a release signed by a plaintiff and defendant discharged other putative tortfeasors from any liability, even though those tortfeasors had not been parties to the release. The court stated: "In Pennsylvania it is well settled that the effect of a release is to be determined by the ordinary meaning of its language. . . . Parties with possible claims may settle their differences upon such terms as are suitable to them. . . . They may agree for reasons of theirs that they will not sue each other, *or anyone else*, for the event in question. . . . When the parties to a release agree not to sue each other or anyone else for a given event, this can effect a discharge of others who have not contributed consideration for the release. . . . This is true even if the language of the release is general, releasing, for example, any and all other persons rather than specifically naming the persons released. . . . However improvident the release may be or subsequently prove to be for either party, their agreement, absent fraud, accident or mutual mistake, is the law of their case. . . . If such a release can be nullified or circumvented, then every written release and every written agreement of any kind, no matter how clear and pertinent, can be set aside whenever one of the parties changes its mind or the injured party receives an inadequate settlement." (Citations omitted; emphasis added; internal quotation marks omitted.) Id., 155–56.

The plaintiff has not established fraud, accident, or mutual mistake; thus, the language of the release, although broad, controls. The release provides specifically that the plaintiff releases claims against Janney's "past, present, and future agents . . . [and] employees . . . ." The defendant was undisputedly a member of an identified class of released persons. The release in no way excluded the defendant or the partnership from the benefit of exemption. The defendant, as an employee of Janney, was thus entitled to invoke the

protection of the release.

Third, the plaintiff argues that when she agreed to the terms of the release she did not intend to release the defendant from any claims. "As a general rule, releases encompass only such matters as may fairly be said to have been within the contemplation of the parties when the release was given." *Farrell* v. *Lechmanik, Inc.*, 417 Pa. Super. 172, 175, 611 A.2d 1322 (1992). Nevertheless, the clear, unambiguous language of the release rendered immaterial the plaintiff's unexpressed subjective intent. See *A.G. Cullen Construction, Inc.* v. *State System of Higher Education*, 898 A.2d 1145, 1168 (Pa. Commw. 2006). The plaintiff was, of course, aware that the defendant was an employee of Janney and that breach of fiduciary duty claims against Janney employees were released upon her agreement to the settlement. The release contained no exceptions or provisions intended to preserve the plaintiff's claims against the defendant or those claims relating to her partnership with the defendant. Consequently, we agree with the trial court that the release barred the plaintiff's claims against the defendant and that summary judgment was therefore appropriate.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Janney Montgomery Scott, LLC, also was named as a defendant, but the action against it was withdrawn. We therefore refer in this opinion to Etzel as the defendant.

[2] The plaintiff also claimed that the court erred in denying her motion for reargument and reconsideration. We do not consider this claim on appeal because the plaintiff did not brief the issue. She raised it only in her brief's preliminary statement of the issues. See *Richardson* v. *Commissioner of Correction*, 123 Conn. App. 301, 306, 1 A.3d 1142 ("[w]here a claim is asserted in the statement of issues but thereafter receives only cursory attention in the brief without discussion or citation of authorities, it is deemed to be abandoned" [internal quotation marks omitted]), cert. denied, 299 Conn. 910, 10 A.3d 528 (2010). The plaintiff further claims that the court erred in concluding that (1) the provisions of the release agreement precluded consideration of the plaintiff's breach of fiduciary duty claims that arose out of her partnership with the defendant, and (2) "the [r]elease did not limit the released claims to only those claims that arose out of [the plaintiff's] employment . . . ." These arguments are subsumed in the plaintiff's primary claim regarding the granting of the motion for summary judgment. We shall address those arguments, then, in our discussion of the plaintiff's claim that summary judgment was improper.

[3] The plaintiff also alleged in count two that Janney aided and abetted the defendant's breach of fiduciary duty. This count is no longer at issue because the plaintiff withdrew her action against Janney.

[4] In his brief, the defendant argues that the portion of the plaintiff's appeal challenging the summary judgment is untimely. The defendant filed a motion to dismiss this appeal for the same reason, and this court denied the motion. Our denial of the motion constitutes a rejection of this argument, and, as such, we decline to address the contention that the appeal from the summary judgment is not timely.

[5] As to procedural issues, our standard of review is governed by the law of Connecticut. See *Zenon* v. *R. E. Yeagher Management Corp.*, 57 Conn. App. 316, 322, 748 A.2d 900 (2000). The release contains a choice of law provision that states that the release "shall be governed by, construed and enforced in accordance with the laws of the Commonwealth of Pennsylvania, without regard to conflicts of laws rules." We apply Pennsylvania law to the substantive claims concerning the release, as did the trial court and the parties.

[6] The parties and the trial court referred to Connecticut law when dis-

cussing ambiguity, and there has been no indication that Pennsylvania law is different.

———————————————————————